EZRA B. ELY & another *vs.* EDWARD B. JAMES & another.

Suffolk.    April 4. — June 29, 1877.    AMES & ENDICOTT, JJ., absent.

In an action for the price of a cargo of coal, to which the defence was payment by the note of a third person, there was evidence that an offer for the coal to be delivered in Maine, at a certain price per ton, was made by the defendant in Massachusetts to an agent of the plaintiff, who did business in New York; that this offer was sent by the agent to the plaintiff, and accepted by him; and the coal was sent to Maine by a vessel hired by the plaintiff for the purpose, with an invoice, which stated the price per ton, less freight; that, on delivery of the coal, the defendant paid the freight and sent a promissory note of a third person in settlement for the price as stated in the invoice, and requested the return of the invoice receipted; that the plaintiff wrote on the invoice, "Received payment by note," signed it and returned it to the defendant; that the plaintiff got the note discounted, and, on failure of the maker to pay it at maturity, took it up and tendered it to the defendant, and, on the maker being adjudged a bankrupt, proved it against his estate, after this action was brought. There was also evidence that, at the time of making the offer, the agent agreed that payment might be made by the note of the third person, and that the plaintiff had previously sold a cargo of coal to the defendant, and had received the note of the same third person in payment. *Held,* that the conduct of the plaintiff, after receiving the order, was evidence of a ratification of the agent's acts, from which, in connection with the former transaction, previous authority in the agent to take the note of the third person in payment might be inferred. *Held, also,* that whether the plaintiff knew or did not know of the agreement of the agent to take the note of the third person, at the time the note was accepted by the plaintiff, was immaterial, if the plaintiff accepted without objection what he had reasonable ground to believe was the result of the agency. *Held, also,* that the judge was not bound to instruct the jury that the fact that the defendant paid the freight would authorize a finding that the coal was delivered to a carrier in New York, and that the contract was a New York contract. *Held, also,* that the evidence of the proof of the note in bankruptcy against the estate of the maker was competent as tending to show that the plaintiff treated the note as his own, and originally accepted it as payment.

No exception lies to the refusal of a judge to give an instructior which assumes a fact to be proved which is in controversy.

By the law of this Commonwealth, the giving of the negotiable promissory note of a third person is evidence of payment of a preëxisting debt, and sufficient where there is nothing to defeat the inference or show that such was not the intention of

the parties; and, in the absence of evidence to the contrary, the rule will be presumed to be the same in Maine.

The law of another state must be proved as facts are proved; but if the evidence admitted consists of a judicial opinion, its construction is for the court.

CONTRACT on an account annexed for the price of a cargo of coal. Writ dated November 18, 1874. Answer, payment by the note of George B. James & Co. At the trial in the Superior Court, before *Aldrich,* J., the following facts appeared in evidence:

The plaintiffs were shippers of coal in New York, and the defendants were dealers in coal in Portland, Maine, under the firm name of James & Williams. Edward B. James, one of the defendants, was in the employ of George B. James & Co., in Boston, and also purchased and ordered coal in Boston for his own firm in Portland. F. B. Crowell, travelling in the plaintiffs' employ, called on Edward B. James at the office of George B. James & Co., in Boston, and solicited an order on the plaintiffs for a cargo of coal for the defendants, offering to sell it at a certain price. James declined to give this price, but offered to take a cargo for his firm at another price, which was less than Crowell was authorized to sell for, and Crowell thereupon signed and sent to the plaintiffs a telegram, on June 20, 1874, in the following terms: "James & Williams offer six eighty for Lehigh broken delivered Portland." This was the offer James had made to him. The plaintiffs thereupon telegraphed to the defendants an acceptance of this offer, and shipped the coal by a schooner to the defendants at Portland, Maine, on June 27, 1874, and sent them an invoice of the coal, as follows:

"New York, June 27th, 1874. Messrs. James & Williams bought of E. B. Ely & Co. Lehigh Coal per Sch. Rebecca Florence.

397 tons broken @ $6.80 del'd at Portland, less
    freight @ 1.35, $5.45 . . . . $2,163.65
Add 4 mos. & 3 days int. 7% . . . 51.74
                                  $2,215.39 "

After receiving the coal, the defendants signed and sent to the plaintiffs in New York the following letter, inclosing the invoice and a note of George B. James & Co.: "Boston, July 11, 1874.

Messrs. E. B. Ely & Co., New York. Dear Sirs : Enclosed please find G. B. James & Co.'s note dated June 27th, four months, for $2,215.39, being in settlement of the enclosed invoice coal per Rebecca Florence, which please receipt and return to us here." The plaintiffs thereupon wrote the following receipt on the invoice, and sent it to the defendants: "Received payment by 4 mos. note of G. B. James & Co., Boston, for $2,215.39 due Oct. 30, '74. E. B. Ely & Co." The plaintiffs also wrote to the defendants as follows: "New York, July 13, 1874. Messrs. James & Williams : Yours of the 11th with G. B. James & Co. note at 4 mos. for cargo per Rebecca Florence received. We would much prefer shorter paper, as we cannot use it to same advantage."

The plaintiffs kept the note and got it discounted, but it was protested on October 30, 1874, for non-payment, resulting from the failure about that day of George B. James & Co., and the plaintiffs paid the amount due on the same to the holder. George B. James & Co. were adjudicated bankrupts in March, 1875, and no dividend to their creditors has been declared. On November 6, 1874, the plaintiffs offered the note back to the de· fendants, and notified them that the plaintiffs would hold them for the price of the coal, but the offer was not accepted, and the plaintiffs produced the note at the trial.

The defendant James testified that, after the occurrence between him and Crowell above related, and after Crowell had got out of the door of the office, he, James, called him back and asked him if this coal was to be paid for in George B. James & Co.'s paper, as usual, and that Crowell said "Yes," and another witness testified that he heard James ask this of Crowell, but could not remember his reply. The defendants further testified that they had purchased coal of the plaintiffs before, and sent George B. James & Co.'s notes to the plaintiffs for it, and that the notes were paid ; but whether they had so purchased more than one cargo they could not remember. Crowell testified that nothing was said about George B. James & Co.'s paper between James and himself. One of the plaintiffs and Crowell testified that the plaintiffs had given him authority to travel and sell and solicit orders for coal at prices fixed in a circular, with liberty to vary these prices within a limit stated by the plaintiffs to him,

and to fix the terms as to time of payment, and to sell for cash or its equivalent, and that the plaintiffs reserved the right to reject any order so obtained, if the credit of the person ordering was unsatisfactory to them, but that Crowell had no authority to agree that the notes of others than the purchasers should be taken for the coal, and Crowell testified that, in fact, he had never done so. The plaintiffs also testified that they had, before shipping the cargo in question, shipped only one cargo to the defendants, and it appeared that the order for this cargo was taken by Crowell, and was a written one, signed by the defendants, in terms as follows : "Portland, Me., July 14, 1873. E. B. Ely & Co. sold James & Williams 150 to 175 tons, Susq. stove f. o. b. 5.40. Insure. Freight limited to 1.90, if cannot ship for that, can cancel the order. Cash or 3 mos. note 7% int."

The defendants offered in evidence the proof by the plaintiffs of the note of George B. James & Co. against their estate in bankruptcy, in November, 1875, as tending to show that the plaintiffs treated the note as their own, and that they had originally accepted it as payment, and the judge admitted the evidence, the plaintiffs excepting.

The plaintiffs contended that the contract respecting their receiving the note of George B. James & Co. was to be interpreted and governed by the law of New York, and that by that law the transaction did not amount to payment, and read the cases of *Vancleef* v. *Therasson*, 3 Pick. 12, and *Schemerhorn* v. *Loines*, 7 Johns. 311, on this point.

The plaintiff E. B. Ely testified that his firm had no intimation that Crowell had agreed that George B. James & Co.'s paper should be taken for the cargo in question. The coal was shipped from New York for Portland on a vessel procured for that purpose by the plaintiffs.

The defendants' counsel argued to the jury, among other things, that no evidence was before them to show what the law of New York was at the time of the transactions in question, the only authority read being a decision in 1810.

The plaintiffs, before the charge to the jury, requested the judge to rule as follows :

" 1. That the whole contract was to be interpreted by the law cf New York, and that the giving of George B. James & Co.'s note did not amount to payment.

" 2. That the contract was contained in the correspondence only, and any oral agreement made by Crowell was not to be taken as a part of it.

" 3. That, there being no evidence as to there having been any previous agreement as to George B. James & Co.'s paper, the agreement of Crowell as to this cargo was not an agreement that it should be payment.

" 4. That if there was no agreement in previous transactions that George B. James & Co.'s paper should be received in discharge of the defendants' liability for coal, then Crowell did not agree to take George B. James & Co.'s note in full discharge for this cargo.

" 5. To direct a verdict for the plaintiffs."

The judge refused to give these requests, the second on the ground that the evidence as to what Crowell had orally agreed went to the jury without objection, and left it to the jury to say whether there had been any such previous agreement as that mentioned in the third request, and to find what Crowell agreed.

The judge also instructed the jury that if there was an express agreement, at the time the contract of sale was made, to take the note of George B. James & Co. in absolute payment for the coal, it was a binding contract, whether construed by the law of Massachusetts or that of New York; and further instructed the jury as follows:

" 1. That it was for the jury to determine whether the plaintiffs gave Crowell authority beforehand to make such a contract. 2. That if they did, his contract bound the plaintiffs. 3. That it was for the jury to determine whether the plaintiffs ratified the contract of Crowell to take the note of George B. James & Co., if he made it. 4. That if the contract was to deliver the coal to the carrier in New York, and from that time to be at the risk of the defendants, the contract was to be interpreted by the law of New York; but that if the contract of the plaintiffs was to deliver the coal in Portland, it was not. But whether the sale of the coal was coupled by a delivery of it in New York or in Portland, would not necessarily be conclusive of the question as to the place where the payment was by the terms of the contract to be made, which was to be determined upon all the evidence in the case. 5. That under the law of Massachusetts

the giving a note of a third person by the purchaser to the seller is *primâ facie* payment of a preëxisting debt. 6. That the unwritten or common law of New York may be proved by parol evidence or by the books of reports of cases adjudged in the courts of that state, and the plaintiffs' counsel has read in evidence a case from the 7th of Johnson, a New York Report, tending to show that by the law of that state the taking of a promissory note for goods sold is not an extinguishment of the original debt or *primâ facie* evidence of it; and, although this case was decided in 1810, it is the duty of the court to say to the jury that, in the absence of any conflicting evidence, that is to be taken to be the law of New York at the present time; but it is not for this court to tell the jury how much or how little that reported case proves, it being a question of fact for the jury upon the evidence to find what the law of New York on the subject in question was or is."

To each of these instructions numbered 1 to 5 the plaintiffs excepted; and after the charge to the jury the plaintiffs requested the judge further to rule:

" 1. That there was no evidence that authorized a finding that the plaintiffs authorized Crowell beforehand to contract to take the notes of others than purchasers of coal from the plaintiffs.

" 2. That if the plaintiffs did not authorize Crowell beforehand to contract for others' notes than the defendants', the contract for payment was a distinct contract from that of sale, and consisted merely of the sending the note to New York and the receipt signed by the plaintiffs in New York and forwarded by them, and was, as a matter of law, a New York contract.

" 3. That there was no ratification of Crowell's contract to take George B. James & Co.'s note in payment, if he made it, if the plaintiffs were not informed of what he had contracted about it.

" 4. That there was no ratification of Crowell's contract to take George B. James & Co.'s note in payment, if he made it.

" 5. That, under the law of Massachusetts, giving a third person's note for a preëxisting debt is not *primâ facie* payment.

" 6. That the receipt showed that the plaintiffs did not pay freight and that the defendants did, and this would authorize a

finding that the coal was delivered to a carrier in New York by the plaintiffs, and that it was a New York contract.

" 7. That the jury were to take the authorities read to them as proof of what the New York law is.

" 8. That the New York law is that taking a note for a preëxisting debt and giving a receipt in full is not payment."

The judge refused so to rule; the jury returned a verdict for the defendants; and the plaintiffs alleged exceptions to the refusal to rule as requested.

*T. L. Livermore*, for the plaintiffs.

*P. A. Collins*, for the defendants.

COLT, J.   An offer for a cargo of coal to be delivered at Portland, the defendants' place of business, at a price named, was given by the defendants in Boston to a travelling agent of the plaintiffs, and forwarded by the latter by telegraph to the plaintiffs' place of business in New York.   The offer was accepted, and, on receipt of the coal at Portland, the defendants sent the note of G. B. James & Co. to the plaintiffs for the amount of the purchase, payable in four months to the plaintiffs' order, inclosed in a letter, which stated that it was in settlement for the coal, and requested the return of the invoice receipted.   The invoice was at once returned by the plaintiffs, receipted as paid by the note in question.   The latter thereupon indorsed the note, had it discounted, and, upon failure of the makers, took it up at maturity.   Soon after the defendants were notified that the plaintiffs intended to hold them for the price of the coal, and an offer was made to return the note to the defendants.

The plaintiffs contend that the effect of taking the note of a third party was to be determined by the law of New York, and that, by the law of that state, the transaction between these parties did not amount to payment for the coal.   In support of these propositions many instructions requested by the plaintiffs were refused, and some were given by the court which were perhaps not absolutely required by the state of the evidence.

The evidence shows that the contract was for delivery in Portland.   That was the defendants' order by telegraph accepted by telegraph, without qualification or condition.   The coal was shipped by the plaintiffs to that place on June 27, 1873, on a vessel procured for that purpose by them, and a

bill of sale of that date, stating the number of tons at the price offered, and reciting that it was to be " delivered at Portland less freight," with interest added for four months and three days, was sent to the defendant. After the receipt of the coal, the defendants sent the note, which bore the date of the bill of sale, and was for the exact amount of the bill, with the interest added, and the plaintiffs returned the bill of sale with a receipt of payment by note written on it. There is nothing in the case to control or contradict this evidence of the contract of the parties as to the place of delivery. Until the coal was delivered in Portland, the contract of sale was executory and the property did not pass.

It is equally plain and uncontradicted that the note, dated at and payable in Boston, was sent from that city to the plaintiffs in New York in settlement for the coal, and received without objection by them. The sale of the coal and the delivery of the note appear to have been parts of one transaction, taking effect as of the same date. The note conformed in amount, date and time of maturity to the requirements of the plaintiffs' bill of sale. It was taken without the defendants' indorsement and was made payable to the plaintiffs' order. It was negotiated by the plaintiffs before maturity. There was evidence admitted, without objection, that the agent of the plaintiffs agreed beforehand to take this note in payment, but this evidence was contradicted and the authority of the agent to make the agreement denied. In all this, however, there was abundant evidence of an express agreement that the note should be deemed payment. Under such an agreement, it is immaterial whether the sale and taking of the note were separate transactions or not, and whether the transaction, in whole or in part, is governed by the law of New York.

The instructions of the court, so far as they were unfavorable to the plaintiffs, were well adapted to the case, and are not open to the plaintiffs' exceptions. The requests for specific instructions, which were presented before the judge's charge, were all properly refused, part of them for the reasons above given, and part of them because they were based on the assumption of a fact which was in controversy, and took from the jury a question which it was for them to decide upon the evidence.

Of the several requests which were presented after the charge, the first and second were properly refused, because they disregarded the element of the conduct and declarations of the plaintiffs after receiving the order, which were evidence of a ratification of the agent's acts from which, in connection with a former transaction, previous authority to the agent might be fairly inferred. It is a sufficient answer to the third and fourth that the ratification of the agent's authority is sufficient so far as the defendants are concerned, if the plaintiffs accepted, without objection, what they had reasonable ground to believe was the result of his agency. Story on Agency, § 259.

As to the fifth request: The rule in Massachusetts is that the giving of a negotiable promissory note is evidence of payment of a preëxisting debt, and sufficient where there is nothing to defeat the inference, or show that such was not the intention of the parties. In the absence of evidence, the same rule must be held to prevail in Maine. In New York and some other states, to give it that effect, there must be some additional evidence that such was the intention. The Massachusetts rule was applied to the note of a third person given for a preëxisting debt in *Wiseman* v. *Lyman*, 7 Mass. 286, and was recognized as so applicable in *French* v. *Price*, 24 Pick. 13, 21, and in *Butts* v. *Dean*, 2 Met. 76. It is too late for this court to change the rule.

As to the sixth request: The fact, that the defendants paid the freight to Portland and were allowed for it, is a circumstance of trifling importance upon the question of delivery, which the judge was not required to rule upon.

As to the remaining requests relating to the law of New York: The laws of another state must be proved as facts are proved; although the construction of the evidence admitted, when it consists of a single statute or judicial opinion, is, as in the case of other written documents, for the court. *Kline* v. *Baker*, 99 Mass. 253. The judge in this case instructed the jury that the official report of the case decided in New York was evidence of the law of that state, and that, in the absence of conflicting evidence, the law so proved was to be taken to be the law of New York at the present time. His further remark was not excepted to, and appears to have been intended to indicate

to the jury that, while it was for the court to construe the opinion, it was for the jury to determine the sufficiency of the evidence to prove that that opinion expressed the law of New York.

All the requests for instructions were properly refused. A single exception to the admission of evidence remains. After the maturity of the note and after the plaintiffs had taken it up, the makers of the note were declared bankrupt. The defendants were permitted to prove, for the purpose of showing that the plaintiffs had treated the note as their own, and had accepted it in payment, that after this action was brought they had proved the note in their own name against the estate in bankruptcy. The evidence was competent. All that was done by the plaintiffs with the note, as well before as after action brought, was at least admissible, however much the weight of the evidence might be diminished by the suggestion that it was the duty of the plaintiffs as mere depositaries to prove the note for the benefit of all parties interested. There was no request by the plaintiffs that this evidence should be limited or qualified by the judge. *Exceptions overruled.*