EDWARD H. GREEN *vs.* HENRY S. RUSSELL & another,
executors.
CÉCILIO GARCIA *vs.* SAME.

Norfolk.    Jan. 20, 1881; March 14. — April 4, 1882.   C. ALLEN, J., did
not sit.

The presumption that a negotiable promissory note, given for a preëxisting debt,
is taken in satisfaction of the debt, is a presumption of fact, which may be con-
trolled by evidence that such was not the intention of the parties.

An executor having a claim against the insolvent estate of his testator, which is
disputed, must present it to the Probate Court, as provided in the Gen. Sts.
c. 97, §§ 26, 27, to determine the validity of his claim; and not to the commis-
sioners appointed under the Gen. Sts. c. 99.

THE FIRST CASE is an appeal by a creditor from the decision of
commissioners appointed by the judge of probate, under the Gen.
Sts. *c.* 99, § 2, to examine and allow claims against the insolvent
estate of Jonathan Russell, deceased, allowing a claim of Ed-
ward H. Green, one of the executors of the will of said Russell.

THE SECOND CASE is an appeal by a creditor from a decree
of the Judge of Probate, under the Gen. Sts. *c.* 97, §§ 26, 27,
allowing the same claim.

The cases were heard together, by *Colt,* J., who found that
the claim of Green should be allowed against the individual es-
tate of Jonathan Russell, and that a proper judgment or decree
should be entered to that effect, in the first or second case, as the
full court should determine; and reported the cases with the
evidence for the determination of this court; such judgment or
decree to be entered as justice might require.   The facts appear
in the opinion.

The cases were argued in January 1881, by *R. D. Smith &
C. A. Prince,* for Green, and by *J. A. Gillis & L. S. Tuckerman,*
for Garcia; and reargued in March 1882, by *Smith,* (*Prince*
with him,) for Green, and by *A. L. Huntington,* (*Tuckerman*
with him,) for Garcia.

MORTON, C. J.   The contract between Edward H. Green
and Jonathan Russell for the sale of the interest of the former
in the firm of Russell & Sturgis was partly written and partly
oral.   They, with others, were members of the firm of Russell &
Sturgis of Manila in the Philippine Islands, which firm, by the

articles of copartnership, expired on December 31, 1871. By the articles, Green and Russell were to be jointly the exclusive owners of the good will and of the right to organize a new firm of the same name and style, at the expiration of the old firm. In July 1871, Green and Russell met in London, and negotiated a sale of Green's interest in the firm. The agreement, so far as it was in writing, was in the form of two letters, written at the same time; — one from Green, in which he agrees to sell all his interest in the firm, including the good will, at the end of the year, for $250,000; " payments to be made by instalments of $50,000 each year for five years, with interest at eight per cent per annum payable each year on all amounts not paid. Your notes indorsed by Russell & Sturgis; " — the other from Russell, in which he agrees at the end of the year 1871 " to take over your interest in the firm of Russell & Sturgis of Manila (and Philippines) placing at your credit in their books $250,000, to bear interest at the rate of eight per cent per annum till said amount is liquidated by the yearly remittance of $50,000 (or more if desired by Russell & Sturgis). Said amount of $250,000 to be in full for all your interest in the good will and style of Russell & Sturgis. Above amount of $250,000 to be represented by my notes, indorsed by Russell & Sturgis, for $50,000 each, interest added, from one to five years." Standing alone these letters do not make a completed contract, because the letter from Russell contains terms materially differing from the proposition contained in the letter of Green, the principal difference being that Russell in his letter had the right to anticipate the payments of the instalments. But the evidence in the case shows satisfactorily that Green accepted the modifications suggested by Russell, and that, according to the intention and understanding of both parties, the sale of Green's interest was made and completed on January 1, 1872, upon the terms contained in Russell's letter.

It is clear from the evidence that the sale was made to Russell individually, and not to the firm of Russell & Sturgis. In his letter, Russell contracts individually, and not as a member of the firm; he agrees to give his notes indorsed by Russell & Sturgis, showing that he was to be primarily the debtor; the firm which in the understanding of the parties was to indorse the notes was not an existing firm, but a new firm to be formed by Russell on

January 1, 1872. The subsequent acts of the parties show clearly that their understanding was that the good will, which was an important part of the consideration of the contract, should belong exclusively to Russell. The articles of copartnership of the new firm, formed by Russell in 1872, expressly recognize the fact that the good will of the house belongs exclusively to Russell. We cannot doubt, upon the evidence, that the sale of Green's interest in the firm was made to Russell, and that, upon its taking effect on January 1, 1872, Russell in his individual capacity became indebted to Green in the sum of $250,000, the consideration agreed upon.

The next question is whether this debt has been paid or extinguished in full. The first three instalments were paid in cash before the death of Russell, so that the only question now is as to the last two. It appears that, upon Russell's return to Manila, and some time between January 1 and February 17, 1872, he made five notes, written in the Spanish language, amounting in all to $250,000, and the interest which would accrue according to the contract, each of the same tenor except in the amount and the time of maturity, of one of which the following is a translation : " $58,000. We promise to pay in Manila, in virtue of the present, on the second day of January 1876, to the order of Jonathan Russell, Esq., the sum of fifty-eight thousand dollars, as per agreement. Manila, 2 January, 1872. Russell & Sturgis." Each of these notes was signed in the name of the firm by said Russell, and at the same time he wrote on each the following indorsement: " Pay to the order of Edward H. Green, Esq. Jon. Russell."

It is contended that the giving of these notes operated as payment of the individual debt of Russell.

The law in this Commonwealth is, that the giving and acceptance of a negotiable promissory note is *prima facie* evidence of payment of a preëxisting debt. But it is a question of fact, in every case, whether the acceptance of a note operates to extinguish the preëxisting debt. It is a question of the intention of the parties. *Ely* v. *James*, 123 Mass. 36. *Melledge* v. *Boston Iron Co.* 5 Cush. 158. *French* v. *Price*, 24 Pick. 13.

In the case before us the parties agreed that the indebtedness of Russell should " be represented by " notes of Russell indorsed

by Russell & Sturgis. The intention was that Green should have the primary liability of Russell, with the indorsement of the new firm of Russell & Sturgis as security. It is admitted that the signatures on the notes, "Russell & Sturgis and Jon. Russell, were all written by said Russell at the same time, and the change of form from that mentioned in said letters was by a mere mistake or inadvertence on the part of both himself and Mr. Green." This goes far to show that the parties did not intend to change their rights, and to substitute, for the primary liability of Russell to Green, a secondary and conditional liability. It also appears in evidence that, after the making of these notes, Russell always recognized himself as primarily liable for the debt which they represented, the new articles of copartnership providing that one half of his share of the profit and loss account should be considered "as a reserve fund and be used to liquidate" this debt. It also is admitted that these notes were never sent to Green, but were retained in Manila by Russell, and, after his death, by one of the members of the firm, until after their maturity, and that "Green never saw or had in his personal possession either of said instruments until long after they became due and payable." There is very little evidence that Green knew what the form of the notes written by Russell was. The letters of Russell which were put in merely speak of the notes as being "all signed and in order," but do not give the form. A letter from Green, dated October 31, 1871, was put in, in which he requests Russell to send "notes of Russell & Sturgis indorsed by you" for the amount fixed by their contract. This letter was written several months before the notes were made. Russell did not comply with the request. In view of the admitted fact that the form of these notes was adopted by Russell by a mere mistake and inadvertence, this evidence is of very little effect, to show either that Green knew the form adopted or that the parties changed their contract as to the form in which the notes were to be made.

Upon the whole evidence, it seems to us that the fair inference is that the form of the notes was adopted by Russell, and the entry to the credit of Green was made upon the books of the firm, as a convenient mode of keeping the accounts, and that there was no acceptance by Green of these notes intended to

operate as a payment or discharge of the direct liability of Russell to him, and therefore that the finding to this effect of the justice who heard the case ought not to be disturbed.

It is not necessary to consider whether the contract is to be .governed by the laws of this country, or by those of England or Spain, because it is not shown that the laws of England or Spain are such as would change the result. It is also unnecessary to consider whether Green would have any rights against the estate of Russell as indorser of the notes, since in the view we have taken he has the right to repudiate the notes and proceed against the estate upon the original debt.

The only other question is as to what is the proper remedy of Green against the estate, he being one of the executors of Russell.

The Gen. Sts. *c.* 97, §§ 26, 27, provide that, " if a debt claimed by an executor or administrator as due to him from the deceased is disputed by any person interested in the estate," the claimant shall file in the Probate Court a statement of his claim, and the same may be submitted to arbitrators, whose award, if accepted by the court, shall be final; or, if the parties do not agree in the appointment of arbitrators, the judge of probate is to hear and decide upon the claim, either party having a right of appeal from his decision to the Supreme Court. The proper course when an executor has a debt against the deceased, if the estate is solvent, is for him to credit himself in his account with the amount of the debt; if it is not disputed, he thus retains out of the estate the debt; if it is disputed by any party interested, he is to apply to the court and file his statement, and have the validity of his debt determined under the provisions of the Gen. Sts. *c.* 97, §§ 26, 27, above cited. *Prentice* v. *Dehon*, 10 Allen, 353. *Ela* v. *Edwards*, 97 Mass. 318. But the question in this case is what is the proper course of proceedings when an executor has a claim against an insolvent estate.

The settlement of insolvent estates of deceased persons is provided for in the Gen. Sts. *c.* 99. It is clear that it would be against the spirit and intent of the statutes to allow the executor to credit himself with, and retain, the full amount of his debt, and thus obtain a preference over other creditors of the same class. The statutes contemplate that all the creditors are

to present their claims to the commissioners, who are to make a list of such as are allowed, and return it to the Probate Court, as the basis for the distribution of the estate. If an executor has a claim, he should present it to the Probate Court; if it is not disputed, it will be entered upon the list of claims allowed, and thus he will receive the same dividend as the other creditors. But if the claim is disputed by any party interested, the provisions of *c.* 99 are not adapted to or intended for its trial. In the proceedings before the commissioners, the executor represents the estate, and is the only party who had the right of appeal if the claim is allowed. In a dispute as to his own claim he would represent both sides. Then, in the court appealed to, the supposed creditor is to file a statement substantially the same as a declaration at law upon the same claim, and like proceedings are to be had as in an action at law prosecuted in the usual manner; that is, the anomaly would be presented of the same person being both plaintiff and defendant in the same suit.

The provisions of *c.* 97 are general. The language used, " if a debt claimed by an executor or administrator as due to him from the deceased is disputed," applies as well to insolvent estates as to solvent estates. Construing the two chapters together, a majority of the court are of opinion that the intention of the Legislature was, that whenever there is any dispute as to a claim made by an executor, whether as to the liability, or amount, or the class to which it belongs, it should be heard and determined in the manner provided in *c.* 97. The amendment of *c.* 99, made in 1865, by which legatees, devisees, heirs and creditors are given the right of appeal where a claim is allowed, cannot have the effect of repealing the provisions of *c.* 97, so far as they relate to insolvent estates. St. 1865, *c.* 258. It does not purport to repeal or alter *c.* 97, and it cannot be reasonably implied that such was its purpose.

After a disputed claim is heard and finally determined, if determined in favor of the executor, it should be entered upon the list of the commissioners in the class to which it belongs, and thus the executor would be entitled to receive a dividend equally with the other creditors of his class.

It follows that the proceedings before the commissioners should be dismissed, and that in the other case a decree should

be entered allowing the claim of said Green as a debt against the separate estate of the deceased, if the parties agree upon the amount; otherwise, the case is to be sent to an assessor to ascertain the amount due.                    *Decrees accordingly.*