ALBERT H. FARNUM & others *vs.* FRANK C. PITCHER & another.

Suffolk.   March 19, 1890. — May 10, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Equity — Issues to Jury — Sale — Gaming Transaction — Symbolical Delivery — Warehouse Receipt — Evidence of Expert — Laws of another State — Exceptions.*

If, upon issues of fact to a jury in equity, in view of the legal result of the facts proved, or of certain answers being returned, some of the issues should be answered in a particular manner, or should remain unanswered, the presiding judge may properly so instruct the jury.

On a bill in equity, brought by brokers to recover for losses upon sales of corn bought upon the defendant's orders, the answer alleged that the purchases and sales were gaming transactions, and that the plaintiffs had wrongfully released the sellers from the contracts of purchase, if any, made for him; but no evidence was offered of such releases at any time before delivery of the corn. *Held*, that a direction to the jury, to which issues of fact were submitted, to find that the releases were not made, was correct.

An instruction was also given to the jury, that, if they should find that the defendant's buying orders were *bona fide*, the answer would be a decided help to them in determining whether the execution of the orders by the plaintiffs was gaming, and it would seem that the latter question should be answered on the same line as the former. The judge also remarked, with reference to the transaction, that "how it was done was identified by account 70," which was the account of the plaintiffs' correspondent, the context of the remark showing that it was used in calling attention to the correspondent's testimony as to the identification of the transaction. *Held*, that the defendant had no ground of exception.

On the issue whether the corn was ever delivered to and received by the plaintiffs, the jury were instructed that such delivery and receipt were sufficiently proved by warehouse receipts entitling them, upon presentation, to have the corn separated from the whole mass in the elevator where it was stored. *Held*, that the defendant had no ground of exception.

A bill of exceptions which fails to show what reply was expected to a question put to a witness and excluded by the judge, or what was to be proved thereby, does not disclose ground of exception.

A witness is not qualified to testify as an expert respecting usages of trade in a city in another State, if it simply appears that he was a member of its board of trade for many years up to 1882, and that the transactions in suit were in 1884, and subject to the rules of that board which went into effect in 1883.

If the evidence of the laws of another State consists of printed statutes and the published reports of cases in its courts, their construction and effect are questions solely for the judge, who may, in his discretion, decline to permit them to be taken to the jury-room.

BILL IN EQUITY filed April 28, 1885, by the members of the firm of Farnum, Reardon, and Company, doing business in Boston as commission merchants, against Frank C. Pitcher and Milford N. Cottle, copartners doing business there under the style of Cottle, Pitcher, and Company, to recover for losses by the plaintiffs in the purchase and sale of corn on the Chicago Board of Trade for the defendants upon orders of the defendant Pitcher, and for storage, insurance, and their commissions as brokers. The answer of Pitcher, who alone defended, admitted giving the orders, but set up that the sales and purchases were gaming transactions, and that the plaintiffs wrongfully released the sellers of the corn upon the contracts of purchase, if any, made on the defendants' behalf.

The case was tried in the Superior Court, before *Staples*, J., upon certain issues of fact for the jury, all of which were answered in favor of the plaintiffs; and the defendant Pitcher alleged exceptions, which appear in the opinion.

*P. H. Hutchinson*, for Pitcher.

*L. S. Dabney*, for the plaintiffs.

DEVENS, J. While thirteen issues were submitted to the jury, they were to be answered under such instructions from the presiding judge, in matter of law, as a proper examination and decision of them required. If, as the legal result of the facts as they appeared, it was required that the issues presented, or any of them, should be answered in a particular manner, he might properly direct that such answer should be returned. If, by the answers to certain questions, it necessarily followed that others involved in or related to them should be answered in a particular manner, he might properly so instruct the jury. Equally, if by the answers to certain questions, the answers to others became superfluous, he might properly instruct the jury to leave the latter unanswered. As in other investigations of fact by a jury, neither party has any ground of complaint against the course pursued by the presiding judge, unless he shall show that some erroneous direction in point of law was given, or other error committed, as by the wrongful admission or rejection of evidence, by which the rights of such party were injuriously affected.

The issues presented were intended to determine whether

certain transactions between the plaintiffs and the defendant Pitcher, as to several alleged purchases and sales of corn, were merely gaming transactions, in which no corn was actually bought and sold, or to be bought and sold, but the gain or loss in which pretended purchases or sales was to be ascertained by the differences in the market price at the time of these pretended transactions, or whether they were *bona fide* transactions of actual purchase and sale. The transactions between the plaintiffs and the defendant took place in Boston, while the purchases and sales, or what were alleged to be such, took place in Chicago, being there conducted by the plaintiffs' correspondent. Besides the matter of defence that the whole series of transactions was gaming, and that no purchases were ever really made on his orders, the defendant relied, in his answer, upon the ground that, if any were made, the plaintiffs wrongfully had released and discharged the sellers of the corn from the contracts of purchase made on behalf of the defendant. The presiding judge, in general instructions, to which no exception was taken except as hereafter appears, fully defined to the jury gaming transactions and real contracts for the purchase and sale of merchandise, and the differences and distinctions between them.

The defendant objects to the direction of the court to answer the fourth, seventh, and tenth questions in the negative. These questions all relate to the alleged release or discharge of the sellers of the corn from their several contracts if made on behalf of the defendant Pitcher. Such direction was correct. *Carter* v. *Goff*, 141 Mass. 123. If the defendant relied upon the fact that there had been such releases or discharges, it was necessary to offer some evidence in support of this defence, and the bill of exceptions distinctly states that there was no evidence that the plaintiffs had ever released or discharged the sellers of the corn from any contract entered into by them on behalf of the defendant in the purchases of corn, which were made in compliance with what are called the defendant's "buy orders."

The defendant especially objects to the instructions given in regard to the third, sixth, and ninth questions, which he considers were a virtual direction that these should be answered in

favor of the plaintiffs. The controversy arose as to three several transactions between the plaintiffs and the defendant, of the dates respectively of September 20, October 13, and October 15, 1884. The second, fifth, and eighth questions had been whether the buy orders given by the defendant in Boston, of these dates respectively, contemplated gaming contracts or *bona fide* transactions. The third, sixth, and ninth questions inquired whether the plaintiffs ever did make contracts in Chicago for the genuine purchases of corn there, which were included in the buy orders of those dates respectively. The learned judge, in regard to these, referring to the instructions which he had given as to the distinction between gaming and *bona fide* transactions, added, that if the jury should find that the second, fifth, and eighth questions related to *bona fide* transactions, " that answer would be a decided help to you in answering the third, sixth. and ninth, because if these different orders, and the execution of them, were not gaming transactions, but *bona fide* transactions, real and not fictitious, it would seem as though questions third, sixth, and ninth, relating to the same transactions as to whether they were genuine or not, would have to be answered on the same lines. That is a matter of suggestion to you, whether it would be of assistance to you in the matter." The judge then recapitulates the various branches of the evidence on the inquiries whether actual purchases were made in Chicago, and submits to the jury the inquiry whether such purchases were genuine, " as distinguished from mere fictions, — mere pretended purchases, by which no property passed on one side, and no liability to pay for any arose on the other." It would be entirely possible that while the orders to buy given by the defendant were *bona fide*, and intended by the plaintiffs to be carried out by actual purchases, that no such purchases were in fact ever made by the plaintiffs. In instructing the jury that if these different orders and the execution of them were not gaming, but *bona fide* transactions, the third, sixth, and ninth questions, it would seem, should be answered on the same lines, embarrassment is created by the use of the words " the execution of them," as the inquiry involved in these questions was whether the plaintiffs had honestly executed the orders they had received, and thus performed the commission with

which they were intrusted by making genuine purchases in accordance with such orders. But the evident object is not to direct the jury to find that these purchases were actually made, if they found that the orders were honestly given, as the defendant contends, but to suggest to them, that, if the orders and the execution of the orders were not gaming, but *bona fide* transactions, they might be answered on the same lines, that is, in accordance with the *bona fides* in which, in the case supposed, the parties would have been found to have acted. That this was the meaning of the court is clear from the careful review of the various heads of the evidence which follows, in which the attention of the jury is called to all which bears on the question of actual purchases. Nor, in connection with this, do we think that the jury could have supposed that they were either directed or advised to find that purchases were actually made if orders were given in good faith.

The defendant also contends that the remark of the judge in referring to the purchases, that " how it was done was identified by account 70," was an instruction to the jury to take that account, which was the account of the plaintiffs' correspondent in Chicago, as an infallible guide for the answers to these three issues. But an examination of the context of the remark shows that it was used in connection with calling the attention of the jury to the testimony of one Baldwin of Chicago and his book-keeper, as to what was done with respect to purchases under each of the orders, and by reference to account 70, of how it was claimed to identify their alleged proceedings. The words of this passage in the judge's charge were as follows : " So you are brought to the question whether these were real transactions in Chicago. In regard to that, you have the evidence in respect to the account between the parties, the payment of drafts, and the settling of balances founded upon transactions of some sort. You have the testimony of Mr. Baldwin of Chicago, and his book-keeper, with regard to what was done with respect to each of these orders, and how it was done was identified by account 70." The jury were left free to attribute such value to the evidence of these witnesses as was supported by the account, and such value to the account as they thought proper.

The defendant further contends that the eleventh question,

which in substance was whether corn was ever delivered to, or received by, the plaintiffs or their agents in Chicago, in pursuance of the orders to buy, could only have been answered in the affirmative if there had been a delivery and reception of corn in fact, instead of a symbolical delivery and reception by warehouse certificates and receipts. Upon this point the instructions were correct. It was not necessary that the various lots of corn purchased should be transferred in specie, or separated from the whole mass in the elevator where it was stored. If the plaintiffs were furnished with the necessary orders and receipts by which they were entitled to go and have the corn called for by them separated from the mass, and to treat the same as held for their benefit by the warehouseman, there was a ·delivery to and receipt by them. If such a delivery and reception of the various lots was proved, the question was properly answered in the affirmative, and the instructions upon this point to that effect were correct. *Cushing* v. *Breed*, 14 Allen, 376.

The defendant further contends that the questions addressed to one Humphrey, a witness offered by him as an expert, and intended to elicit opinions as to the usages of trade in Chicago, as to what charges might rightfully be made, what were the usual forms of buy orders, and what were there treated as actual or fictitious purchases and sales, were wrongfully excluded. It would be sufficient to say that where the bill of exceptions fails to show, as in the case at bar, what the answer would have been, or what the party asking the question offered or expected to prove by the answer, it does not show that the excepting party has been harmed, and the exceptions cannot be sustained. This point has been so often determined that it hardly requires a citation of authorities to sustain it. *Crowley* v. *Appleton*, 148 Mass. 98. In addition to this, the evidence adduced by the defendant fails to show that Humphrey had a sufficient knowledge as to the usages of trade in Chicago as they existed when the transactions between the plaintiffs and the defendant Pitcher took place. The plaintiffs' bill alleges that, prior to the transactions in controversy, the defendant had signed a contract, dated July 22, 1884, stipulating that all future transactions are to be according to its terms, and among ·its terms is the

provision that transactions are to be subject to the rules of the Chicago Board of Trade. The answer admits this, but alleges that this contract was obtained by fraud. This issue was submitted to the jury by the first question, who have found that it was not thus obtained. Humphrey had been a member of the Chicago Board of Trade for twenty-three years up to 1882. There was nothing to show where he had since resided, what occupation he had since pursued, or whether he continued to have any experience in dealing in grain after he had ceased, in 1882, to be a member of the board. The transactions between the plaintiffs and the defendant were in 1884, subject to the rules of the Chicago Board of Trade. It was in evidence that these rules were adopted, and went into effect, on September 1, 1883, and there was no evidence of any other, or of any former rules. Under these circumstances, as the only rules and usages of trade to be considered were those which existed in 1884, and as the evidence failed to show that Humphrey had any knowledge, or means of knowledge, of them as they existed at that time, his evidence *as to them as an expert might properly be excluded.*

The defendant also claims that the published volumes of the Illinois Criminal Code, and of the Illinois Reports, which he put in evidence, should have gone to the jury-room. As where the evidence of foreign law consists of statutes or judicial opinions, the questions as to their construction and effect are solely for the court, it might certainly, in its discretion, decline to send them to the jury. *Whithead* v. *Keyes,* 3 Allen, 495. *Burghardt* v. *Van Deusen,* 4 Allen, 374. *Merrill* v. *Nary,* 10 Allen, 416. *Kline* v. *Baker,* 99 Mass. 253. *Ely* v. *James,* 123 Mass. 36. Whether it would not be its duty so to do, we need not now consider.

*Exceptions overruled.*