EDWARD McGUIRE *vs.* LAWRENCE MANUFACTURING COMPANY.

Middlesex.    March 7, 1892. — May    1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Exception — Exclusion of Question — Release — Charge to Jury.*

A bill of exceptions which states that a party offered to ask a witness a certain question, and that the judge excluded it, without disclosing what reply was expected, or what was to be proved thereby, shows no ground of exception.

After a witness has testified on a subject at length and in detail, a question calculated to call out merely a repetition of the same testimony, either in substance or in detail, is properly excluded, in the absence of any statement from his counsel that any other answer is sought or expected.

Where a party brought an action for personal injuries, alleging that he could neither read nor write, but not alleging that he did not know English, and it appeared that he had signed a release before the bringing of the action, which release he alleged was procured by fraud and signed by mistake in ignorance of its contents, it was *held* that the question put to him by his own counsel, "Do you know the meaning of the word 'release'?" was both faulty in form and immaterial.

It is within the power of the court not only to state in its charge the evidence which has been given, but to show the jury the questions upon which the facts which it may prove bear, leaving to them its application.

Where the plaintiff's counsel stated, after the charge, that he excepted to the statement made therein that there was nothing to show that the plaintiff was not a man who understood the ordinary transactions of life, and the presiding justice said that if it had been suggested, or there had been anything to show, that the plaintiff was not a man of ordinary capacity, then he withdrew that part of the charge, and it did not appear that the counsel pointed out any such suggestion or made any request for the withdrawal of that part of the charge in response to the offer, it was *held* that the most natural construction of the reply to counsel was that it was itself a withdrawal of the instruction objected to; but if it was not to be so construed, and if the presiding justice had mistaken the position of the case and had inadvertently assumed a condition of facts different from the true one, that it was the duty of counsel, after such a statement, to call attention to the fact that there had been suggestions of incapacity, and that he could not complain that the instructions were not modified without showing his response to this offer on the part of the court.

When a man capable of acting for himself, and who understands the ordinary transactions of life, understandingly and for a consideration executes a written release, it is a principle of law that his act discharges his cause of action, and it is the right and duty of courts to state and enforce the principle when the proper occasion arises.

It is always within the province of the court, in charging the jury, to state as uncontroverted facts circumstances which, upon the pleadings and the evidence, although material, are not in dispute, and to state what rule of law it will be proper for the jury to apply, if, in connection with such admitted facts, they shall find other facts from the evidence.

BARKER, J. This action is for personal injuries received on January 11, 1887. The writ was brought on June 30, 1890. The defendant answered, denying liability, and also pleaded a written release and discharge, executed on May 3, 1887. The plaintiff filed a replication, alleging that the release was procured by fraud, and was signed by mistake, in ignorance of its contents, and this was the principal issue at the trial. The plaintiff was a witness, and denied upon the stand that the release was read over to him or explained to him, and testified that the agent of the defendant told him that the defendant was making him a present of two hundred dollars, and handed him a pen to sign some paper (the alleged release), and that before signing he told the agent

that he could neither read nor write except his own name, and that the agent told him it was simply a receipt to show that the defendant was making him a present of two hundred dollars, and that the defendant was not liable for his injury, and that thereupon he signed. In answer to a question from his counsel, he admitted his signature to the release, and was then asked, "What did you understand you were signing?" and this question being excluded, he was asked, "Do you know the meaning of the word 'release'?" This question was also excluded, and exceptions were saved to the exclusion of each of the questions.

Since no offer of proof was made, nor any statement of what the plaintiff expected to show by the answers, this alone would be sufficient to require us to overrule the exceptions to their exclusion. *Farnum* v. *Pitcher*, 151 Mass. 470, 475. But, in addition, there was abundant reason why the presiding justice might properly exclude them if he saw fit. The plaintiff had just testified at length and in detail that the paper had not been read over to him, and that, in reply to his question to the agent as to what it contained, the agent told him it was simply a receipt to show the defendant was making him a present of two hundred dollars, whereupon he signed it. The question, "What did you understand you were signing?" put to him after he had so testified, was naturally calculated to call out merely a repetition of the same testimony, either in substance or in detail, and, in the absence of any statement from his counsel that any other answer was sought or expected, was properly excluded, as it tended merely to waste the time of the court and jury in a useless repetition of evidence. There can be no doubt that, if the question had been asked for any other or proper purpose, counsel would have made it known to the court, and been allowed to have an answer given. The question, "Do you know the meaning of the word 'release'?" was faulty in form, and was immaterial. The plaintiff in his replication, had alleged that he could neither read nor write, but had not alleged that he did not know English; and even if his knowledge of language had been in issue, the judge was not bound to allow evidence of his knowledge or want of knowledge of that particular word.

The other exceptions are with reference to the charge of the

court, of which the plaintiff complains in two respects. One is that the jury were told that they might take into account in determining whether the plaintiff had, or thought he had, a valid claim, the fact that his action was not brought until June, 1890, and the further fact that for a considerable portion of the time he was in the employment of the defendant. But these were undisputed facts in the case, relating to the plaintiff's own conduct, which it was plainly competent for the jury to consider in weighing his testimony; the charge stated that the lapse of time did not affect his right to sue, or defeat his right of action if he had one, and is open to no objection or criticism. It is within the power of the court not only to state in its charge the evidence which has been given, but to show the jury the questions upon which the facts which it may prove bear, leaving to them its application, and this is all that was done in this portion of the charge.

In dealing with the question of the alleged release, the presiding justice at one point assumed that the plaintiff was a man capable of acting for himself, saying : " Is he a man capable of acting for himself? There is no suggestion that I am aware of that he is not. Then if that paper was read to him — being sufficient in form to operate as a discharge — as a release, if he entered into that contract then and there and received a consideration for it, then he discharged all right of action which he might have had." After the charge, the plaintiff's counsel stated that he desired to have his exception noted to the statement that there were no suggestions that the plaintiff was not a man who understood the ordinary transactions of life, and the court then said : " If there is any suggestion, or if it has been suggested at all in any way, or if there is anything in the evidence tending to show that he is not a man of ordinary capacity, then I will withdraw that part of the charge." It does not appear that counsel pointed out any such suggestion, or made any request for the withdrawal of that part of the charge, in response to this offer. The most natural construction of the reply to counsel is that it was itself a withdrawal of the instruction objected to. But if it is not to be so construed, and if the presiding justice had mistaken the position of the case, and had inadvertently assumed a condition of the facts different from the true one, it was the duty of counsel, after such

a statement, to call attention to the fact that there had been suggestions of incapacity, and he cannot complain that the instructions were not modified without showing his response to this reasonable offer on the part of the court. But, aside from this failure on the part of counsel to put the plaintiff in a position to claim the benefit of his exception, the bill of exceptions itself discloses no suggestion that the plaintiff was not in fact a man of ordinary capacity, and capable of acting for himself. He brought and prosecuted his suit without the intervention of a guardian or next friend. It is to be presumed that he selected his own counsel. The replication, which charges with great particularity the fraudulent means and the deception by which he claims to have been cheated into signing the release, does not allege that he was incapable of understanding or of making such an instrument. He took the witness stand, and he testified in detail to the circumstances of his personal history, of the accident, and of the alleged settlement, and the bill of exceptions does not disclose, either in his testimony or in that of any witness, that he had any want of capacity to act for himself. He was born and married in Ireland, had emigrated to this country, and had lived here for some months, working in the mill and on a railroad. So far as we can see, it was an uncontroverted fact in the case that he was a man capable of acting for himself, and who understood the ordinary transactions of life. When such a man, understandingly and for a consideration, executes a written release, it is a principle of law that his act discharges his cause of action; and not only is it a principle of law, but an important and wholesome one, which it is the right and duty of courts to state and enforce when the proper occasion arises. It is always within the province of the court, in charging the jury, to state as uncontroverted facts circumstances which, upon the pleadings and the evidence, although material, are not in dispute, and to state what rule of law it will be proper for the jury to apply, if, in connection with such admitted facts, they shall find other facts from the evidence. Such a course is not charging upon the facts in the sense of the statute; nor is it argument, although there are, of course, many cases in which a clear statement leaves no necessity for argument, and in which, when a jury is brought by a clear statement of the evidence to

see what findings of fact are necessarily involved in a verdict for one party or the other, they will refuse to stultify themselves by a general conclusion involving findings which, if baldly stated, must be universally conceded to be absurd.

The argument of the plaintiff's counsel with reference to the charge has been much broader than his exceptions; but we see no reason for supposing that injustice has been done to his client. The language of the court did not express an opinion upon any disputed question of fact, and the law was clearly and correctly given. There is nothing upon the bill of exceptions to show that the tone or manner of the justice gave any other significance to any portion of the charge than the plain and ordinary meaning of the language used.    *Exceptions overruled.*

*P. J. Hoar*, for the plaintiff.

*G. F. Richardson*, for the defendant.