## JULIA LAWLOR *vs.* LESTER T. WOLFF.

Middlesex. November 22, 1901. — February 26, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Evidence*, Opinion, Experts. *Rape.*

On the trial of a bastardy process the complainant testified, that the defendant forcibly had sexual intercourse with her in spite of her making all the resistance in her power. The defendant asked a medical expert, in substance, whether it was possible for a man to have carnal intercourse with a woman of relatively the same strength against her will without rendering her unconscious by the use of drugs or otherwise. The question was excluded. *Held*, that the relative strength and activity of a man and woman struggling with each other was a matter of common knowledge and not a subject for expert testimony. Moreover, it did not appear what the defendant offered to prove by the witness, and, in the absence of a formal offer of proof, it could not be presumed that the answer would have been in the negative, as such an answer, if true, would exclude the possibility of rape, a crime recognized and punished by the law, except where the man is of greater relative strength or renders his victim unconscious.

COMPLAINT on bastardy process under Pub. Sts. c. 85, filed in the Police Court of Somerville April 25, 1900.

The defendant pleaded not guilty.

On appeal to the Superior Court, the case was tried before *Hardy*, J. The complainant testified, that she was about twenty-five years of age and the defendant was seventeen; that she was employed as a domestic in the family of the father of the defendant in May, 1899; that, in the night time, the defendant came into her room at a little after eleven o'clock, where she was in bed, awakened her and forcibly had sexual intercourse with her; that she struggled and endeavored to overcome him; that she did not cry out, but made all the resistance which was within her power; and that he overcame this resistance and ravished her.

There was evidence tending to show, that the complainant was a woman in ordinary good health and the defendant a boy of fifteen years at the time of the alleged intercourse. They were relatively of about the same strength.

As tending to contradict the testimony of the complainant, that intercourse had been had with her against her will, the

defendant introduced as a witness Dr. Ralph M. Canfield, a physician practising in Boston, who, after being qualified as an expert, was asked the following question: " Taking a woman of the ordinary health and strength and a man — the male — of relatively the same strength seeking to have carnal knowledge of her body, is it possible for him to do so without her consent? " To this question the complainant objected. Thereupon the judge said: " Well, is that a subject of expert testimony? There may be differences in people, differences in their physical constitution. It seems to me it is not a subject of expert testimony. I exclude it if you offer it as expert testimony."

For the same purpose the witness was asked this question: " Has nature given to woman such strength to her pubes that if she exercised that strength against a man attempting to ravish her he can do so without rendering her unconscious by the use of drugs or otherwise ? " On the complainant's objection, the judge excluded the question.

The jury returned a verdict of guilty; and the defendant alleged exceptions to the exclusion of the two questions quoted above.

The case was submitted on briefs at the sitting of the court in November, 1901, and afterwards was submitted on briefs to all the justices.

*H. H. Pratt*, for the defendant.

*G. W. Tebbetts & C. B. Loud*, for the plaintiff.

KNOWLTON, J. The only exceptions in this case are to the refusal of the court to allow a physician to answer as an expert two questions put by the defendant's counsel.

The complainant testified that the defendant forcibly had sexual intercourse with her; that she struggled and endeavored to overcome him and made all the resistance that was within her power, but he overcame this resistance and ravished her. The defendant proposed to ask the witness Canfield the following question: " Taking a woman of the ordinary health and strength, and a man — the male — of relatively the same strength seeking to have carnal knowledge of her body, is it possible for him to do so without her consent ? " The witness was a physician practising in Boston, and he was being examined as an expert. But we do not understand from the bill of exceptions that he had

qualifications beyond those of ordinary physicians. Assuming this to be so, it does not appear that he had any special or peculiar means of knowledge on the subject to which the question relates, or that his opinion would be more likely to be correct than that of jurors. The relative strength and activity of a man and a woman struggling with each other for the mastery is a matter of common knowledge so far as it can be known at all, and there is no reason to suppose that physicians have had experience that would enable them to judge better than others as to the probable result of a struggle of the kind testified to.

Moreover it does not appear what the defendant offered to prove by the witness. If an affirmative answer had been given it would not have been favorable to the defendant, while a negative answer, if true, would exclude the possibility of the commission of rape unless the man was of greater relative strength than the woman, or unless he rendered her unconscious by the use of drugs, or otherwise. As this crime has been recognized by the law and punished by the courts from early times, it is not to be presumed that such an answer would have been given, and in the absence of a formal offer of proof or of something equivalent, there is nothing to show that the defendant was harmed, even if the question properly might have been allowed. *Farnum* v. *Pitcher*, 151 Mass. 470, 475. The defendant has no good ground of exception to the refusal to allow this question to be asked.

The second question is not much different from the first. Although there was a reference to possible anatomical or medical knowledge as bearing on the matters testified to by the complainant, it does not appear nor does it seem probable that any such knowledge, as distinguished from the knowledge of common men, would aid in determining the question before the court. For the reasons given in regard to the first question a majority of the court are of opinion that the ruling was right as to this also.

*Exceptions overruled.*