### DELIA MCINTIRE *vs.* WILLIAM LEVERING.

Suffolk. January 17, 1889. — February 28, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Malicious Prosecution — Good Character of Plaintiff — Evidence — Malice.*

The good reputation in the community of a plaintiff may be proved by him at the trial of an action for a malicious prosecution upon a criminal charge.

Statements in relation to the perpetration of the crime made by third persons, in the absence of the prosecutor, to the trial justice who issued the warrant, are not competent evidence at such a trial.

At such a trial, after the defendant, for the purpose of showing that the prosecution was not without probable cause, had introduced in evidence the statement of a married woman, communicated to him by her husband, that she in company with the plaintiff and another perpetrated the crime, a witness for the plaintiff was permitted to testify that the defendant, before the complaint was made, had said that he had heard that such married woman "had been in jail." *Held*, that the evidence was competent.

TORT for malicious prosecution for larceny. At the trial in the Superior Court, before *Thompson*, J., the plaintiff, as part of her case, was allowed, against the defendant's objection, to

introduce in evidence the testimony of witnesses to show her general reputation in the community for honesty of character.

The defendant introduced evidence tending to show that on the day of the larceny, July 27, 1887, he was absent from his house, and that upon his return the next morning one Madden, his hired man, informed him that his (Madden's) wife had confessed to him that she, in company with the plaintiff and another, had broken into the defendant's premises, and stolen his wine; that one Hewett, a boy, also informed him that he saw an axe, which was found on the premises, in the hands of the plaintiff's daughter, on July 27; that Madden and Hewett went, on July 28, before a trial justice, and related the foregoing facts and confession; that the trial justice informed Madden that the defendant was the proper person to make a complaint, which Madden communicated to the defendant, who thereupon appeared, on July 29, before the trial justice with Hewett and Madden, and swore to the complaint against the plaintiff for the larceny of the wine. The defendant then offered in evidence the statements of Madden and Hewett to the trial justice on July 28, but the judge excluded them, as not having been made in the presence of the defendant.

The plaintiff was allowed, against the defendant's objection, to put the following question to the plaintiff's husband, who was a witness: "In conversation with Levering, the defendant, before the complaint, did he say that he had heard that Mrs. Madden had been in Dedham jail?" To which the witness answered in the affirmative.

The jury found for the plaintiff; and the defendant alleged exceptions.

*T. J. Morrison*, for the defendant.

*H. F. Naphen*, for the plaintiff.

KNOWLTON, J. There is some conflict of authority as to the competency of evidence of the reputation of the plaintiff in a trial of an action for malicious prosecution. There are many cases in which it is held that in actions of this kind, as in actions of slander, the general bad reputation of the plaintiff may be shown in mitigation of damages. There are also decisions, that in suits for malicious prosecution such reputation may be shown to meet the allegation of want of probable cause. *Bacon*

v. *Towne,* 4 Cush. 217, 241. *Pullen* v. *Glidden,* 68 Maine, 559.
*Barron* v. *Mason,* 31 Vt. 189. *Rodriguez* v. *Tadmire,* 2 Esp.
721. *Gregory* v. *Thomas,* 2 Bibb, 286. *Bostick* v. *Rutherford,*
4 Hawks, 83. *Gregory* v. *Chambers,* 78 Mo. 294. *Rosenkrans*
v. *Barker,* 115 Ill. 331. But cases do not go so far as to permit
proof of particular instances of bad conduct.

In determining whether there is probable cause for a pros-
ecution for the commission of a crime, the known character or
general reputation of the person suspected is always an element
of some importance; for, as was said by Chief Justice Shaw in
*Bacon* v. *Towne, ubi supra,* " The same facts, which would raise
a strong suspicion in the mind of a cautious and reasonable man,
against a person of notoriously bad character for honesty and
integrity, would make a slighter impression if they tended to
throw a charge of guilt upon a man of good reputation." In a
suit of this kind, where the prosecution complained of was for
an offence implying moral turpitude, the plaintiff's general rep-
utation at the time of the prosecution, if the defendant was
where he would be likely to know it, is always involved in the
issue, and the defendant may properly be permitted to show
that it was bad.

We see no good reason why the plaintiff should not be per-
mitted, on the other hand, to show affirmatively that it was
good. It is true that every one is presumed to be of good char-
acter until the contrary appears, and this presumption ordina-
rily saves the necessity of proof. Indeed, in civil cases, as a
general rule, evidence of reputation is not competent upon a
question as to liability for a particular act. But whenever
character is in issue, the rule is different. One charged with
a crime is not obliged to rest upon a presumption of good
character. *In favorem libertatis,* he may prove the fact, if he
can, by a weight of evidence far more effective than any mere
presumption. A plaintiff in a suit for a malicious prosecution
upon a criminal charge has the burden of proving that the
prosecution was without probable cause. In defending against
the prosecution he would have had the right to show his good
reputation, although his character was not attacked otherwise
than incidentally by the prosecution itself. The same inci-
dental attack upon his character necessarily appears in the suit

for the malicious prosecution. To prove that the attack was originally made without probable cause, we think he should be permitted to show his good reputation known to the defendant when the prosecution was commenced. In several of the States there are adjudications to this effect. *Woodworth* v. *Mills*, 61 Wis. 44. *Blizzard* v. *Hays*, 46 Ind. 166. *Israel* v. *Brooks*, 23 Ill. 575. *Miller* v. *Brown*, 3 Mo. 127. *Scott* v. *Fletcher*, 1 Overton, (Tenn.) 488. The defendant's exception to the admission of this kind of evidence must be overruled.

Testimony of statements by Madden and Hewett to the justice who issued the warrant, made in the absence of the defendant, was rightly excluded. The statements cannot be treated as facts tending to show the plaintiff's guilt, and competent as evidence for that purpose, which the defendant may be presumed to have known, even though his knowledge of them is not distinctly shown. See *Bacon* v. *Towne*, 4 Cush. 217, 241. They are mere declarations of third persons, which do not appear to have been communicated to the defendant, and which have no bearing upon either of the questions at issue in the case.

The third exception presents a question of more difficulty. To show that the prosecution was not without probable cause, the defendant relied upon a statement of Mrs. Madden, communicated to him by her husband, that she, accompanied by the plaintiff and another, broke into the defendant's premises, and stole his wine. It became a question for the jury to determine how far the defendant was warranted in believing her statement, and how far he did in fact believe it. It is quite clear that it would not be competent to attack the credibility of a witness in a trial by proving that he had been confined in jail, or that he had been guilty of any unlawful or criminal act. Nothing less than proof of conviction of a crime would be admissible. But this rule rests upon considerations of public policy, which forbid the introduction of evidence of particular acts, involving a trial of new and unexpected issues, for which the opposing party could not be expected to be prepared. There can be no doubt that one's known acts of misconduct, indicating his character, may properly be considered in determining his credibility.

A witness was permitted to testify that the defendant, before the complaint was made, said "that he had heard that Mrs. Madden had been in Dedham jail." If that statement tended to show, as against the defendant, that she was less credible than other persons, it was competent evidence upon the question whether there was probable cause for the prosecution. If it had no proper bearing upon her credibility, but at the same time indicated distrust of her on the part of the defendant, it was competent on the question whether the prosecution was malicious. It may be argued, with much force, that one who should say colloquially of another that he had been in jail, would probably mean that he had been there under such circumstances as to affect his reputation, and to indicate that he was untrustworthy. So, to say of another that one has heard that he has been in jail, implies some degree of credence in the story. The evidence in the present case seems to have been of little importance. Yet it purported to show what was in the defendant's thoughts before the complaint was made. Upon the facts disclosed, we cannot say that the jury might not properly consider it. *Exceptions overruled.*