## JOHN J. GEARY *vs.* JAMES STEVENSON.

Suffolk.    November 11, 1896. — June 16, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Assault — False Imprisonment — Evidence — Exceptions — Law and Fact — Arrest by Private Person — Principal and Agent.*

A verdict for the defendant in an action for an assault and battery and false imprisonment renders immaterial exceptions to the exclusion of evidence directed to the question of damages.

An exception to the exclusion of a question put to a witness will not be sustained, if no offer of proof was made of what the excepting party expected to prove by the answer.

In an action for false imprisonment, declarations, after the plaintiff's arrest, of the defendant's servant, who made the arrest, are inadmissible in evidence.

Evidence that the plaintiff in an action for false imprisonment had never, prior to his present arrest, been arrested or complained of for any crime, and that he had a good reputation, is properly excluded.

If the plaintiff in an action for false imprisonment was innocent of the charge upon which he was arrested by the defendant's servant, and the latter, in making the arrest, was acting solely under the defendant's authority, the defendant will be liable, but if the servant was acting solely under the direction of a police officer, and had no authority from the defendant to make the arrest, the latter will not be liable.

At the trial of an action for false imprisonment, the plaintiff having been arrested by the defendant's servant, if there is evidence that the servant for the time being was acting under the direction and control of a police officer, the judge cannot rule, as matter of law, that the servant in what he did was acting as the servant of the defendant, but the question is properly submitted to the jury.

No exception lies to the refusal to give instructions in the terms requested, if they are fully covered by the instructions given.

In an action for false imprisonment, the plaintiff, who was arrested by the defendant's servant while leaving the defendant's premises, is not entitled to have the jury instructed that, if the servant "arrested the plaintiff, complained of him to the officer on the street, and at the station house caused him to be imprisoned

for the purpose of carrying out his employer's instructions to look out for the thieves and protect the property, he was acting within the scope of his employment, and the defendant is liable."

TORT, in two counts, for an assault and battery and false imprisonment. Trial in the Superior Court, before *Richardson*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that, on February 10, 1895, the defendant was the owner of premises on Boylston Street in Boston, the back yard of which extended in the rear to the line of Providence Street; that he had bought the premises about a year before with the intention of altering the building for business purposes, and it was entirely vacant; that the fence in the rear, along Providence Street, was in a dilapidated condition, and the gate had either been torn off or was open; that early in the afternoon of that day, the plaintiff, with one McHenry, left South Boston, where they lived, to seek employment in the city proper; that they walked across the Common and into and along Providence Street, when they reached the back yard of the premises in question; and that they both went into the yard for a few minutes to make a necessary short call.

Both testified that the plaintiff had returned to the sidewalk, and McHenry was walking after him when they heard and saw one Tholley, an employee of the defendant, coming through one of the windows in the rear of the building, sliding down a plank into the yard, and running towards the street; that McHenry, who was then near the gate, stepped aside to let him pass, when Tholley grabbed him by the collar and insisted upon taking him to the police station; that McHenry resisted, and his coat was badly torn; that, as they reached the sidewalk, the plaintiff came to his companion's assistance, and both asked Tholley for an explanation; that Tholley only said he was going to bring him to the station, and that they would there find out; that the plaintiff then took hold of McHenry and tried to get him away, and in the scuffle that ensued all three fell; and that, upon gaining their feet, the plaintiff and McHenry ran in opposite directions, the plaintiff running through Church Street to Boylston Street, with Tholley chasing him.

The plaintiff testified that he got as far as Arlington Street

at the foot of the Public Garden, when through exhaustion he fell to the ground, and Tholley, coming up, again seized him, and against his protestations that he had done nothing insisted upon bringing him to the station ; that Tholley held him by the arm and collar, and in that way walked him down Boylston Street, where they met a police officer, one Kendall ; that in answer to the police officer's inquiries, Tholley said the plaintiff was a lead-pipe thief whom he had caught on the defendant's premises ; and that the plaintiff protested his innocence, but the officer put handcuffs on him, and all three walked to a police station.

The plaintiff further testified, against the defendant's objection, that at the station the officer stepped aside, and Tholley made the charge of " breaking and entering " against him to the lieutenant at the desk ; and that he was then searched and put into a cell, where he remained until about seven o'clock that evening, when he was taken out, placed in the police van, and then driven with other prisoners to the tombs, where he was lodged in a cell until the next morning, when he was discharged without further proceedings.

The plaintiff offered to show that while in prison, and after his dinner at home the noon before, he had nothing to eat and drink except some bread and water on the morning of his discharge. To this the defendant objected. The evidence was excluded ; and the plaintiff excepted.

A slip from a newspaper the day following the arrest, stating that the plaintiff had been arrested upon the charge of breaking and entering the premises in question, was put in evidence, the defendant waiving objection ; and the plaintiff testified that he showed this slip soon after to Tholley, in order to have the defendant publish a contradiction of the charge. He was then asked what Tholley said, and whether the contradiction had been made. These questions were excluded, upon the defendant's objection ; and the plaintiff excepted.

The plaintiff's mother and sister both testified that the plaintiff had not been out of his own house on the day of his arrest until the afternoon, as he testified, and had remained in bed until about 11 o'clock A. M.

The plaintiff offered to prove by both these witnesses that

Tholley met them in the court house on the morning of the plaintiff's discharge, and said to them that the defendant told him to arrest any one whom he found about the premises ; that it was McHenry whom he wanted; and that he would not have arrested the plaintiff if he had not interfered. This was excluded; and the plaintiff excepted. The plaintiff also offered to show by both these witnesses that prior to this affair he had never been arrested nor complained of for any crime, and that he had a good reputation. This was excluded, upon the defendant's objection ; and the plaintiff excepted.

As to Tholley's authority, the plaintiff testified that the defendant, pending a former trial, told him in conversation that he had trouble with lead-pipe thieves on the premises in question, and had authorized Tholley to arrest any one whom he found about the place. This the defendant when a witness denied; but on cross-examination admitted that he had directed Tholley to watch for the thieves, and report them to the officer on the beat ; and that Tholley had been in his employ as janitor and watchman seven or eight years.

The defendant also testified that David Greer was his general agent and manager, with full authority to direct and control all his employees, including Tholley; and that whatever Greer did in this regard had his sanction.

Greer, called by the defendant, testified that, early on February 10, officer Kendall came to his office and told him that the house in question appeared to have been broken into that morning, and to send some one over there to see to it. This conversation between Greer and the officer was admitted, against the plaintiff's objection ; and the plaintiff excepted.

Greer also testified that soon after he ordered Tholley to go over to the premises, and directed him to do whatever officer Kendall should tell him to do. On cross-examination, the plaintiff asked this witness if Tholley had reported the arrest to him and the charge he had preferred against the plaintiff at the station. To this the defendant objected. It was excluded; and the plaintiff excepted.

Tholley, called by the defendant, testified that he went to the premises as directed by Greer, who gave him no instructions to arrest anybody, but to act under direction of the officer; that he

met officer Kendall there, examined the place, and found from the plank up to the rear window and other things that there had been a break early that morning; that the lead pipe in the house had been cut out and part of it carried away; that the remainder was done up in bundles, and left by the thieves near the entrance to the basement from the rear; that the officer directed him to lie in wait in the house for the thieves, who would probably return for the pipe they had left, and to detain them when they came back until he came; that the officer would walk by the rear of the house occasionally, and watch for signals; that he did as the officer directed; that nothing happened during the morning, and he locked the front of the house, and, leaving the rear basement door unlocked, went to his dinner about noon; that when he returned and came into the house he heard a noise of some one downstairs where the lead pipe was; that he looked out of the rear window and saw the plaintiff in the yard; that he saw him going out of the yard, about ten feet from the door, toward the street; that the plaintiff looked up and down the street, and then toward this window, and then motioned to some one near the basement door; that then, as McHenry came in sight from the direction of the basement door, which was open, the witness opened the window where he stood and started to slide down the plank, which had been left in the position it had been put by the thieves, that as they heard the noise the plaintiff and McHenry started to run; that he overtook and caught McHenry inside the yard; that thereupon the plaintiff interfered to liberate McHenry when they reached the sidewalk, and both succeeded in getting away from him; that they ran in opposite directions; that he chased the plaintiff to Arlington Street, where a man stopped the plaintiff and held him until the witness came up, when he took him along Boylston Street until he met the officer, to whom he delivered the plaintiff; and that he acted in all that he did under the direction of the officer, and did nothing that the officer did not direct him to do, either in the original detention or in any of the subsequent proceedings after delivering the plaintiff to the officer. The police officer, Kendall, was not called as a witness by either party.

The plaintiff requested the judge to instruct the jury as follows:

" 1. If the jury find that the plaintiff was not guilty of the charge preferred against him, and that Tholley, the defendant's agent, acted within the scope of his employment, the arrest was unlawful; the defendant has no justification, and the jury should find for the plaintiff on both counts.

" 2. Where a private citizen takes the law into his own hands, and without a warrant either arrests or procures the arrest of another for any crime, he can only justify such arrest by proving the actual guilt of the person arrested. An honest belief, reasonable suspicion, or probable cause of guilt is not enough.

" 3. Even if the jury find that the defendant did not specifically instruct his agent to make an arrest, still he may be liable.

" 4. If Tholley arrested the plaintiff, complained of him to the officer on the street, and at the station house caused him to be imprisoned for the purpose of carrying out his employer's instructions to look out for the thieves and protect the property, he was acting within the scope of his employment, and the defendant is liable. The fact that Tholley acted in a reckless and unlawful manner is no defence."

The judge instructed the jury on matters material to the plaintiff's requests, in substance as follows, and, except so far as appears therein, the requests for instructions were declined:

" If you should find that the plaintiff went upon those premises that morning for the purpose of stealing, Tholley, though not an officer, would have had a right to arrest him and detain him. The distinction, I understand, between the right of a private person to arrest and an officer is, an officer has a right to arrest a man upon reasonable suspicion. He is an officer of the law, and is supposed to have some skill and experience in determining questions of guilt and innocence of parties, and it is not to. be supposed he would arrest anybody unless he had a good reason, and therefore an officer has a little wider authority to arrest without a warrant than a private person; but a private person may arrest a man without a warrant if the man is committing a felony, that is, a crime that is punishable by imprisonment in the state prison, and stealing in a building is punishable by imprisonment in the state prison; and therefore if the plaintiff went on those premises that morning for the purpose of steal-

ing lead pipe or any other property in that building, then Tholley, who was there as janitor, had the right to arrest the plaintiff then and there, or to follow him and arrest him. So that if you find that fact which is claimed, as I understand, by the defendant that you should find upon this evidence, you need not go any further, because he was rightfully arrested and rightfully detained. But if a private person undertakes to arrest a man, — and here is the difference between his power of arresting and that of an officer of the law, — if a private person undertakes to arrest a man not in the commission of a crime, he is bound to prove in court, if he is called upon to do so, that the man whom he arrested was committing a crime, or had entered the premises, or was about to commit a crime.

"And on this question of determining whether the plaintiff went there for the purpose of stealing the pipe in the building, I do not think you would have to prove that by the same rule that you would in a criminal case. If he was on trial in a criminal court for that offence, it would be necessary for the government to prove it beyond a reasonable doubt ; but here in civil cases I understand, even when this question arises, it is only that the jury may decide such a question as that by the preponderance of the evidence, just as they do any other question in this court. So that if you find this young man went upon the premises, a few minutes before he was arrested, for the purpose of stealing, I do not think the defendant would be liable. But if you find that he went upon the premises for the innocent purpose which he says, then there come some other questions, and then you will be bound to look into the facts to see just what took place and where the arrest and detention were. . . .

"Now, then, a question arises right there whether or not Tholley, in doing that, was acting under the authority and by the direction, express or implied, of the defendant, or whether he was acting solely and only as the servant and agent of the police officer. I shall instruct you that if he was innocent of the crime, if he did not go on the premises for the purpose of stealing, then Tholley had no right to arrest him and detain him ; and if he did it solely and only on the authority and by the direction of the defendant, then the defendant would be liable for that detention there on the street ; but if he got no

direction from the defendant's agent, Greer, specially, or if he had none generally to arrest him, but was acting solely under the direction of the officer, and had no authority from the defendant or Greer to arrest him, then the defendant would not be liable, in my opinion, under all the facts and circumstances of this case, and I shall give you on that point, I think, the instructions which I am asked to give you by the defendant, ' that if Tholley at the time of detaining the plaintiff was under the direction of the policeman Kendall, and not under the direction or control of the defendant, the defendant would not be liable. for the arrest and detention by Tholley.' . . .

" If, however, you find that Tholley did not act under the control and direction of the police officer, but that he did have authority from the defendant himself or his general agent, Greer, to arrest him and detain him, and his arrest was wrongful, that is, if he was innocent of going on the premises for any felonious purpose, then I think for that arrest and detention on the street the defendant would be liable. But I do not think that the defendant would be liable for his treatment by the officers at the station, or in the lock-up. after he had been taken into charge and held by the officers, and after Tholley had ceased to have any control or direction over him or in regard to his treatment."

The plaintiff then asked the judge to instruct the jury that the relation of principal and agent did not exist between Tholley and the police officer under the circumstances of this case. To which the judge replied : " No, I cannot state that. I think that is a question for the jury."

The jury returned a verdict for the defendant ; and the plaintiff alleged exceptions.

*J. A. McGeough,* for the plaintiff.

*S. L. Whipple,* (*W. R. Sears* with him,) for the defendant.

LATHROP, J. There is nothing in this case to show that the defendant had anything personally to do with the arrest or imprisonment of the plaintiff, or knew anything about it. He is sought to be held liable for the acts of one Tholley, who, although an employee of the defendant, did the acts complained of, as the defendant contended, while acting under the control and direction of one Kendall, a police officer.

There are various exceptions to the exclusion of evidence

which we are of opinion must be overruled. Some of these go merely to the question of damages, and, as there was a verdict for the defendant, these are now immaterial. *Poland* v. *Brownell,* 131 Mass. 138. *Sullivan* v. *Lowell & Dracut Street Railway,* 162 Mass. 536. *Oak Island Hotel Co.* v. *Oak Island Grove Co.* 165 Mass. 260.

What Tholley said the day after the arrest is inadmissible on two grounds. No offer of proof was made of what the plaintiff expected to prove. *McGuire* v. *Lawrence Manuf. Co.* 156 Mass. 324, 326. Further, evidence of the declarations of Tholley after the event were inadmissible to bind the defendant. *Williamson* v. *Cambridge Railroad,* 144 Mass. 148. *McKinnon* v. *Norcross,* 148 Mass. 533. *Vicksburg & Meridian Railroad* v. *O'Brien,* 119 U. S. 99. This covers also the declarations of Tholley alleged to have been made in the court house on the morning of the plaintiff's discharge.

The exceptions state that the plaintiff offered to show by his mother and sister " that prior to this affair he had never been arrested nor complained of for any crime, and that he had a good reputation." This evidence, we are of opinion, was rightly excluded. In civil proceedings, evidence of this kind is, by the great weight of authority, held not to be admissible, unless the character of a party is directly in issue, as it is in actions of libel or slander, seduction, and malicious prosecution. In other cases the general rule applies that the character of a party is immaterial, and evidence of it is inadmissible, even though the cause of action is one for which a criminal prosecution might be brought, or where the offence set up in justification involves a crime. Among the numerous cases which have come before the courts may be cited the following, where this rule has been applied. Arson, or a similar statutory offence. *Schmidt* v. *New York Ins. Co.* 1 Gray, 529, 535. *American Ins. Co.* v. *Hazen,* 110 Penn. St. 530. *Thayer* v. *Boyle,* 30 Maine, 475. *Gebhart* v. *Burkett,* 57 Ind. 378. Assault and battery. *Bruce* v. *Priest,* 5 Allen, 100. *McCarty* v. *Leary,* 118 Mass. 509. *Day* v. *Ross,* 154 Mass. 13. *Porter* v. *Seiler,* 23 Penn. St. 424. *Thompson* v. *Church,* 1 Root, 312. *Givens* v. *Bradley,* 3 Bibb, 192. *Cummins* v. *Crawford,* 88 Ill. 312, 318. *Schaeffer* v. *Oppenheimer,* 9 N. Y. St. Rep. 688. Criminal conversation. *Pratt* v. *Andrews,* 4 Comst. 493. *Norton*

v. *Warner*, 9 Conn. 172. Divorce, where a crime is charged. *Humphrey* v. *Humphrey*, 7 Conn. 116. *Lockyer* v. *Lockyer*, 1 Edm. Sel. Cas. 107. False imprisonment. *Downing* v. *Butcher*, 2 M. & R. 374. *Russell* v. *Shuster*, 8 W. & S. 308. Fraud. *Heywood* v. *Reed*, 4 Gray, 574. *Gough* v. *St. John*, 16 Wend. 646. *Potter* v. *Webb*, 6 Greenl. 14. *Simpson* v. *Westenberger*, 28 Kans. 756. Wrongful appropriation of property. *Wright* v. *McKee*, 37 Vt. 161. *Smets* v. *Plunket*, 1 Strob. 372.

The plaintiff relies, in support of his exception, on the case of *McIntire* v. *Levering*, 148 Mass. 546. But the only point decided in that case was that in an action for malicious prosecution the plaintiff was entitled, on the issue of probable cause, to show his good reputation, if this was known to the defendant. This decision followed numerous other decisions, and affirmed a well recognized exception to the general rule. We find nothing in the language used which warrants the plaintiff's contention that, in a civil action, wherever a crime is committed, the plaintiff is entitled to show what his general reputation is. *Bacon* v. *Towne*, 4 Cush. 217, which is cited in *McIntire* v. *Levering*, is also an action for malicious prosecution.

*Howland* v. *Blake Manuf. Co.* 156 Mass. 543, was an action for libel, which is also generally considered an exception to the general rule. The court, after citing some New York cases to the point that, if the commission of a crime is charged in the libel and the defendant offers proof of the charge, the plaintiff cannot show his previous good reputation in answer to the evidence of his guilt, refers to the case of *Downey* v. *Dillon*, 52 Ind. 442, as making a distinction between cases in which the charge sought to be proved is of the commission of a crime, and those in which the charge is of smaller magnitude. It is then said, " We are aware of no well considered cases which go further than that." We do not understand this case as intending to lay down a general rule applicable to all offences, but merely as deciding that, if reputation was admissible in an action of libel, the plaintiff had not brought his case within even the limited rule stated by the Indiana case.

The reason given for the exclusion of evidence of reputation in *Lamagdelaine* v. *Tremblay*, 162 Mass. 339, — that it was held by this court in *Howland* v. *Blake Manuf. Co.* 156 Mass. 543,

" that on principle as well as authority evidence of good reputation is not competent to show that one is not guilty of a dishonorable or unlawful act, which is not punishable as a crime," — was an inadvertence, inasmuch as no such point was decided in the case cited, as we have already pointed out. The evidence offered was undoubtedly rightly excluded, because the case came within the general rule to exclude such evidence in civil cases, and not within any of the exceptions to the rule.

The first instruction requested was covered by the instruction given, except so far as it was qualified by what was said to the effect that the defendant would not be liable if Tholley was acting solely under the direction of the police officer. The judge could not, on the evidence in the case, rule, as matter of law, that Tholley in what he did was acting as the servant of the defendant. There was evidence that for the time being he was acting under the direction and control of the police officer. This question was properly submitted to the jury. If he was so acting, then the general master would not be responsible for his acts. *Kimball* v. *Cushman*, 103 Mass. 194. *Murphey* v. *Caralli*, 3 H. & C. 462. *Manning* v. *Adams*, 32 W. R. 430. *Murray* v. *Currie*, L. R. 6 C. P. 24. *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12, and cases cited.

The second and third instructions requested were fully covered by the instructions given.

The plaintiff was not entitled to have the fourth request for instructions given. If it had been given, the jury might have been misled. It entirely omitted all reference to the guilt or innocence of the plaintiff, which was a material factor in the case. The subject matter was sufficiently covered by the charge.

*Exceptions overruled.*