## THURKETTLE *v.* FROST.

1. EVIDENCE—POSSESSION OF LAND—TITLE TO BUILDINGS.
   > Where plaintiff claims that he purchased the right to occupy land at the time that he bought the buildings thereon, the bill of sale to plaintiff's vendor and the chattel mortgage back are admissible to show that he had no title to the land, and that his purchase was with knowledge that the buildings had always been treated as personal property.

2. MALICIOUS PROSECUTION — ADVICE OF COUNSEL — QUESTION OF FACT.
   > Where defendant, in an action for malicious prosecution, based upon an arrest in proceedings to compel him to keep the peace, claimed the advice of counsel constituted a defense, it was proper to refuse to direct a verdict in his favor, as it was for the jury to determine whether he truly stated the facts to counsel, and whether he was actually in fear that the

plaintiff would execute his threat if he was not restrained by legal proceedings.

3. SAME—PROBABLE CAUSE—ADVICE OF COUNSEL—WITHHOLDING FACTS.

In an action for malicious prosecution, the jury, in determining the question of probable cause, may consider all the facts and circumstances concerning the dispute between the parties,. whether the defendant fully and fairly stated all the facts to his counsel and acted in good faith on his advice, and whether he willfully withheld any material fact from the justice in making the complaint.

4. SAME—REPUTATION OF DEFENDANT.

In an action for malicious prosecution, plaintiff's previous good reputation is admissible as bearing upon the question of probable cause.

5. SAME—MALICE—EVIDENCE.

The fact that the defendant had other land which he might use than that from which he was trying to evict the plaintiff is inadmissible to show malice.

Error to Kent; Wolcott, J. Submitted April 15, 1904. (Docket No. 71.) Decided July 7, 1904.

Case by Henry Thurkettle against Shepherd P. Frost for malicious prosecution. There was judgment for plaintiff, and defendant brings error. Reversed.

*Crane, Norris & Drew,* for appellant.

*Smedley & Corwin,* for appellee.

HOOKER, J. For many years a private ferry was maintained across Grand river. The first ferryman was one John Everhard, and in 1884 he obtained a license from the highway commissioner to build a habitation in the highway, at the river bank. Everhard sold his ferry and house to Rosegrant, and Rosegrant sold to Meyer, who gave back to Rosegrant a chattel mortgage upon the house and other property, including some outbuildings, boats, etc. Meyer sold to the plaintiff, no writings being given, and yielded possession to him in the year 1900.

He lived in the house from that time until the disagreement which led to this action arose. Smedley, plaintiff's counsel, became the owner of the chattel mortgage in the meantime.

The Allendale Timber Company owned 800 acres of land lying on the bank of the river, both north and south of the highway referred to. They purchased in 1898. The buildings occupied by the plaintiff were upon this land, only 2½ feet of the house being within the limits of the highway. The Allendale Timber Company was engaged in logging operations at this place, the defendant being its manager. The highway extends to the river at the point where the ferry landing was established, on its west bank. The ground sloped upward from the river, forming a side hill, upon which were plaintiff's house and other buildings. The house was almost 5 rods from the river, which runs approximately north and south at that point, and the outbuildings were about 38 feet south of the house.

At the time plaintiff purchased the ferry, it was agreed by his vendor that the contract price should be $500 less if he should have to move to the other side of the river. He was fully advised of the true ownership of the land, and made no claim of ownership. It is not clear, however, that he knew that the house did not stand wholly within the highway. Plaintiff bought the ferry in October, 1900, and previous to that time the timber company had built a dock extending from the highway south a distance of 150 feet. It was between the buildings and the river. There was also a logging railroad and a team road; one branch of the railroad being close to the west side of the buildings, thus bringing the buildings between the railroad and the dock. The defendant desired to use the ground upon which the buildings stood for a banking place for logs, and asked plaintiff to move his buildings. This he refused to do, claiming a right to remain there. The defendant told him that he should put his men on the next morning to grade the hill for the purpose. A Mr. Childs, who was in

his employ, and generally had charge of such operations, was with him at the time of this talk. The plaintiff replied that he should stop them if they came, and, being asked how, replied, "With cold lead." The men did not appear to do the grading, but upon the next day, acting under advice of counsel, defendant began summary proceedings to recover possession of the land, and also made a complaint, upon which a warrant was issued for the plaintiff's arrest, under the statute providing for recognizances to keep the peace. After his arrest this proceeding was dismissed, at the suggestion of the prosecuting attorney, upon the ground of irregularity in the proceedings. The summary proceedings case was tried, and a verdict and judgment rendered against the plaintiff in this case, and the buildings have been removed, and defendant is in possession of the premises.

At some stage of the proceedings after the dismissal of the surety proceedings, the plaintiff began this action against the defendant, charging him with false imprisonment and malicious prosecution. He recovered a judgment for $275 on the malicious prosecution count, and the defendant has brought error.

It was the plaintiff's claim that the institution of the proceedings to bind plaintiff over to keep the peace was a malicious and unwarranted prosecution and persecution, intended to harass the plaintiff and make his occupancy uncomfortable, and thus drive him into yielding his rights. In contravention of this claim, the defendant sought to show that the plaintiff knew that his house was upon the premises of the defendant, and that he never claimed to own the land where the buildings stood; that he was not only without any paper title to the land, but that his purchase of the house was with knowledge that it had always been treated as personal property. To support this defense, the defendant offered in evidence the bill of sale given from Rosegrant to Meyer, and the chattel mortgage given by Meyer to him, and these were excluded by the court upon the ground that these papers would throw

no light upon the case, and the admission that the buildings were personal property. Counsel coupled with his admission the statement that plaintiff purchased the right to occupy the dwelling house and its appurtenances purely as a dwelling as long as he was a ferryman; not claiming any title to the real estate, but purely the right to occupy and use it as long as he stayed there as ferryman. It is said by defendant's counsel that there is nothing in the bill of sale that implies any such right or understanding. An inspection of the bill of sale satisfies us of this. There is nothing in it that indicates an attempt to convey any tenancy in land, or an understanding by the purchaser that he was acquiring such. It is obvious from this record that the plaintiff had no title nor right to possession of any part of the premises, unless it be such part of the house as stood in the highway; and, whether a landowner can be bound by a license by the highway commissioner to another to build and occupy a dwelling in the highway in front of his premises, we do not decide.

It is plainly deducible from the record that the only excuse for plaintiff's refusal to vacate this land was his alleged claim that he supposed he had a right to stay, under his purchase, which both he and his counsel asserted. Anything tending to show that he did not suppose so in good faith was admissible, as it would bear upon the question of damages, if nothing more, and defendant was not bound to be satisfied with the admission as made. It is clear from the record that plaintiff was a trespasser, and that a claim of adverse possession has no foundation in the testimony. He and his vendors were not shown to have occupied adversely, and such occupation as they had was not exclusive. It does not follow that the question of the plaintiff's good faith should have been taken from the jury, as defendant's counsel insist, but the testimony offered should have gone to the jury.

Was the refusal of the court to instruct the jury to render a verdict for the defendant, on the ground that probable cause was shown, error? According to the defend-

ant's testimony, he stated to his counsel and to the justice exactly what occurred at the time the threat was made. Plaintiff testified that he said that he would stop defendant's men with cold lead if they should attempt to grade the hill. Neither testified that he made a personal threat against Childs in any other way. The justice wrote the complaint, and alleged a threat to shoot Childs. It was signed by defendant, who then left, and the justice afterwards issued the warrant and caused it to be served. The defect in the proceedings upon which the proceeding was dismissed was the failure of the justice to examine the complainant under oath, as the statute requires, and manifestly the defendant was not to be blamed for this. Plaintiff's counsel say that the threat was a conditional one, and also was not a threat to shoot any one, but to use cold lead, and that it was not a threat to shoot Childs, in any event. We have little hesitancy in saying that a threat to stop one with cold lead is a threat to shoot him. The authorities are not agreed that a threat to shoot one if he shall attempt a lawful act does not justify the charge of a threat to shoot him, and, while the plaintiff did not make his threat a specific threat against Childs, if the defendant stated the exact facts to counsel and the justice, he is not responsible for the action of the justice in framing his complaint, and making it allege a threat to shoot Childs; it appearing that Childs would have been the one to undertake the work, and the threat being to shoot such as should do so. It is claimed that the witnesses do not agree as to what took place at the time of making the threat, and, if they did, we think that, under the proof, it was for the jury to determine whether the defendant did truly state what occurred. Again, it was for the jury to determine from all the circumstances whether the defendant was actually in fear that the plaintiff would execute his threat, for, if he was not, and the proceeding was instituted for purposes other than a bona fide attempt to prevent a breach of the peace, the complaint was malicious. See Tiff. Crim. Law, 295. It was therefore not

error to refuse to direct a verdict for the defendant, or to refuse to instruct the jury that the advice of Albert Crane constituted probable cause. We think that counsel are wrong in saying that there is no testimony controverting the claim of good faith on defendant's part.

In this connection we may add that it was proper for the court to charge the jury that—

" In determining this question of probable cause you can consider all the facts and circumstances as shown by the evidence, so far as they throw any light upon that question— the dispute between the parties as to the right to the use of this land, the circumstances under which the threat was made, whether it had before been made to Mr. Childs, the language used by Mr. Thurkettle in making the threat, whether the defendant fully and fairly stated all the facts, and what Mr. Frost said to his attorneys, and acted in good faith on Mr. Crane's advice, and whether he willfully withheld any material fact from the justice in making the complaint."

We are of the opinion that the court did not err in admitting evidence of plaintiff's previous good reputation. It had a bearing upon the question of probable cause. The great weight of authority sustains the ruling, as will be seen by the citations in plaintiff's brief: *Bacon* v. *Towne*, 4 Cush. 217; *McIntire* v. *Levering*, 148 Mass. 546 (20 N. E. 191, 2 L. R. A. 517, 12 Am. St. Rep. 594); *Woodworth* v. *Mills*, 61 Wis. 44 (20 N. W. 728, 50 Am. Rep. 135); *Shannon* v. *Spencer*, 1 Blackf. (2d Ed.) 526; *Oliver* v. *Pate*, 43 Ind. 132; *Blizzard* v. *Hays*, 46 Ind. 166 (15 Am. Rep. 291); *Coleman* v. *Heurich*, 2 Mackey, 189; *Israel* v. *Brooks*, 23 Ill. 575; *Ross* v. *Innis*, 35 Ill. 487 (85 Am. Dec. 373); *Rosenkrans* v. *Barker*, 115 Ill. 331 (3 N. E. 93, 56 Am. Rep. 169); *Olson* v. *Tvete*, 46 Minn. 225 (48 N. W. 914); *San Antonio, etc., R. Co.* v. *Griffin*, 20 Tex. Civ. App. 91 (48 S. W. 542); *Scott* v. *Fletcher*, 1 Overt. 488; *Barron* v. *Mason*, 31 Vt. 189; *Funk* v. *Amor*, 4 Ohio Cir. Ct. R. 271; *Brand* v. *Hinchman*, 68 Mich. 602 (36 N. W. 664, 13 Am. St. Rep. 362).

Testimony was admitted tending to show that the de-

fendant had other places to pile its logs, and it is urged that this unnecessary insistence that plaintiff move his house was evidence from which malice might be inferred. The plaintiff had no right to occupy this ground, and the defendant's right to evict him was not dependent upon its necessity for the immediate use of the premises. The question was immaterial to the issue, and no legitimate foundation for an argument that it implied malice. ·

We are constrained to reverse the judgment and direct a new trial.

The other Justices concurred.