E. B. EMORY v. W. T. EGGAN.

No. 14,827   (88 Pac. 740.)

SYLLABUS BY THE COURT.

MALICIOUS PROSECUTION—*Findings and General Verdict—New Trial Ordered.* In an action for damages for the malicious prosecution of a civil action the jury returned a general verdict for plaintiff, and answered in the affirmative that before instituting the action defendant had stated the facts fully to an attorney who, knowing all the facts, advised him to bring the action, and that it was brought upon such advice. Upon being polled one of the jurors stated that such was not his answer to the question and refused to stand by it. Thereupon the jury were discharged. *Held,* upon examination of all the evidence and circumstances of the case, and in view of the importance of the question and the character of the action, the judgment should be set aside and a new trial granted.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed January 5, 1907. Reversed.

*Hackney & Lafferty,* for plaintiff in error.

*Brown & Brown,* for defendant in error; *G. H. Buckman,* of counsel.

The opinion of the court was delivered by

PORTER, J.: W. T. Eggan brought this action against E. B. Emory to recover damages for the malicious prosecution of a civil action. A judgment was given in plaintiff's favor for $556, which Emory seeks to reverse.

The facts in brief are that Eggan removed from Garden City to Winfield in 1901 and opened a "racket" store. About four months afterward he sold the store to Doctor Emory for the agreed price of $1440. Emory was without business experience himself and purchased it to be managed by his son. Three weeks after the sale he brought an action in the district court against Eggan for damages, and in his petition alleged that Eggan had falsely and fraudulently misrepresented

the invoice value of the stock and that he had been damaged thereby $550. That case was tried to a jury and a judgment rendered in favor of Eggan, who then brought this action for damages as the result of the charges contained in the former action, alleging that he had paid out attorney's fees and expenses in defending the action; that his credit had been damaged; and that he had suffered from mental anxiety and loss of time and health by the bringing of the action.

The main defense set up in the answer is that Emory had employed a reputable attorney to whom he had stated fully and completely all the facts and circumstances, omitting nothing, in reference to his dealings with Eggan in connection with the purchase of the stock, and that thereupon his attorney had advised him that he had a cause of action, and upon this advice the action was brought, the attorney preparing all the pleadings.

Numerous errors are assigned, three of which are deemed of sufficient importance to require comment. Plaintiff introduced the depositions of numerous witnesses from Garden City to prove that when he lived there his reputation for honesty and fair dealing was good. The contention of defendant is that in an action for malicious prosecution such evidence is incompetent for the purpose of proving want of probable cause unless it be shown that such reputation was known to, or should have been known by, the plaintiff in the action claimed to have been brought maliciously. There was no evidence showing or tending to show that Doctor Emory knew or might have been acquainted with Eggan's previous reputation when he brought the action. The authorities sustain this contention. (Newell, Mal. Pros. 466.)

In *McIntire v. Levering*, 148 Mass. 546, 20 N. E. 191, 2 L. R. A. 517, 12 Am. St. Rep. 594, it was said: "To prove that the attack was originally made without probable cause, we think he should be permitted to show his good reputation known to the defendant when

the prosecution was commenced." (Page 549.) This view of the law is also sustained by the following cases: *Woodworth v. Mills,* 61 Wis. 44, 20 N. W. 728, 50 Am. Rep. 135; *Israel v. Brooks,* 23 Ill. 575; *Miller v. Brown,* 3 Mo. 127, 23 Am. Dec. 693; *Blizzard v. Hays,* 46 Ind. 166, 15 Am. Rep. 291; *Bank of Miller v. Richmon,* 64 Neb. 111, 89 N. W. 627.

At the time this evidence was offered it was objected to as incompetent, irrelevant and immaterial. Upon inquiry by the court as to whether there was any special reason the attorney for defendant said: "There is n't any issue in this case about his integrity." The objection was overruled and the evidence admitted. The petition contained an averment that plaintiff enjoyed exactly that kind of reputation previous to the bringing of the action charging him with fraud, and that the action was brought for the purpose of injuring and destroying such reputation. The general denial raised as an issue the very question whether he in fact did possess such a reputation. The testimony was therefore material and competent for one purpose; and it might be said in passing that it appears to have been offered and relied upon for no other purpose.

Conceding the doctrine laid down in the cases referred to, the objection to the evidence was too general. When evidence is offered which is competent for one purpose and incompetent for another purpose, and it appears probable that it may be regarded by the jury as competent for the other purpose, the court should be asked to limit the force and effect of the testimony by a proper instruction. In *Commercial Travelers v. Barnes,* 72 Kan. 293, 308, 80 Pac. 1024, it was held error for the court to refuse such instruction. (See cases there cited.)

Another claim is that it was error to admit evidence of the publication by a local newspaper of an article reciting the fact that an action had been begun against Eggan charging him with fraud and misrepresentation. This was claimed in the petition as one of the elements

of damages, and may be said to be one of the natural consequences resulting from the filing of such an action.

We come now to a proposition involving a question of practice which, so far as we are aware, has not been passed upon by this court, and which seems seriously to affect the merits of the case. The court submitted nine special questions and the jury answered them, including the following:

" (7)   Ques. Did the defendant go to H. C. Hargis, a lawyer at Winfield, Kan., and state the facts fully to him before the said action was brought, and did the said Hargis, knowing all of the facts, advise the defendant herein as the plaintiff therein to bring said action, and was it brought by said Hargis in pursuance of said statement so made by the defendant to him? Ans. Yes."

Upon the reading of the answers counsel for plaintiff stated that there were three questions embodied in No. 7 and that plaintiff would like specific answers to each, and asked the court to allow the jury to retire and make separate answers. Defendant objected; the court was doubtful; counsel for plaintiff remarked that he had failed to notice the scope of this question until he was arguing it to the jury or he should have moved to divide the question. The court then polled the jury as to the verdict and answers. One of the jurors said that the answer to that question was not his.

"The Court: Do you refuse to let it stand as your answer to that question?—that is all I want to know.

"Juror: I do; it was n't the way I understood the question; it did n't strike me that was the way it should have been answered.

"The Court: Here is one juror refuses to stand by his answer."

The motion of plaintiff to resubmit this question to the jury was renewed, objected to by defendant, and the jury were discharged.

It is contended that defendant was bound to agree that the question should be resubmitted to the jury, or,

if not, that it stand as not answered; that the result is the same as though no such question had been submitted in the first place and consequently the general verdict governs. The general verdict by itself is a finding that defendant acted with malice and without probable cause, and amounts to a finding that he did not submit his cause fully to an attorney and act upon legal advice. As observed, this constituted his sole defense.

If the question stood as originally answered, it will be conceded that defendant's motion for judgment on the finding must have been sustained. We have, then, the peculiar situation of a general verdict finding malice and want of probable cause, and an answer by eleven jurors that facts existed which probably a majority of the courts have said amounts to a finding that there was probable cause, and, according to the holdings of the other courts, at least negatives malice. (See 19 A. & E. Encycl. of L. 686, note 2, and 687, note 1; *Dolbe v. Norton,* 22 Kan. 101; *Railroad Co. v. Brown,* 57 Kan. 785, 48 Pac. 31.) It makes no difference here which view is adopted; the finding, if it be a finding, destroys the verdict. Malice counts for nothing where there is probable cause.

"Malice is a fact which can be proved by the circumstances attending the getting up of the prosecution, but if there be probable cause for the prosecution the malice of the prosecutor weighs nothing, though the accused be innocent." (*Israel v. Brooks,* 23 Ill. 575, 576.)

The want of probable cause is the main ground of this action. In *Railroad Co. v. Smith,* 60 Kan. 4, 55 Pac. 272, a judgment was reversed because the evidence was held to show probable cause. Likewise in *Bailey v. Dodge,* 28 Kan. 72. (See, also, *Malone v. Murphy,* 2 Kan. 250; *Investment Co. v. Burdick,* 67 Kan. 329, 72 Pac. 781.)

The burden was upon plaintiff to show affirmatively by circumstances or otherwise that defendant had no

ground for the prosecution—no ground sufficiently strong in itself to warrant a reasonably prudent man in commencing the action. There was direct evidence that Doctor Emory stated his case fully and fairly to the attorney and acted upon the attorney's advice. His evidence was uncontradicted by any witness. There was, therefore, abundant evidence to sustain the finding made by the jury and agreed to by eleven of them. In view of the jealousy with which actions of this kind have always been looked upon by the courts, the evidence in the case, the amount of damages allowed, and all the circumstances, we are inclined to view the proceedings as equivalent to a mistrial and to hold that in justice the case should be retried.

The judgment is reversed for another trial.