# JAMES SAPPINGTON OF S.

*vs.*

## ESTELLA L. FAIRFAX.

*Malicious Prosecution—Want of Probable Cause— Evidence of Character—Advice of State's Attorney.*

In an action for malicious prosecution, the plaintiff may offer testimony in chief to show that his reputation was good in the community at the time of the prosecution; such evidence being confined to reputation for honesty, in the case of a charge of larceny. p. 188

In order to entitle the plaintiff to recover, he must show a want of probable cause for instituting the prosecution, and reputation is relevant upon this question. p. 188

A witness as to character should be interrogated as to his knowledge of the person's "general reputation." p. 190

In an action for malicious prosecution, that the Justice of the Peace held the plaintiff for the action of the Grand Jury by reason of the defendant's statement to the Justice of the Peace that he would get more evidence of the plaintiff's guilt than he had yet obtained, is relevant at least upon the question of damages. p. 191

A witness for plaintiff in such an action, who had given testimony adverse to plaintiff both before the Justice of the Peace and the Grand Jury, may properly be asked, for the purpose of testing his credibility, whether, at the time of giving such testimony, he did not know plaintiff to be innocent of the charge.
p. 192

In an action for malicious prosecution under a charge of larceny, by one who worked in defendant's house from time to time and who bore a good reputation for honesty, the evidence as to plaintiff's conduct after the time of the alleged theft being conflicting, *held* that there was sufficient evidence to go to the jury of want of probable cause. p. 193

In such an action plaintiff need not prove malice on defendant's part, this being inferrible from a want of probable cause.

p. 194

That defendant's action in causing the arrest and prosecution of plaintiff was under the advice and direction of the State's Attorney is no justification, unless he laid before such official the material facts, and this is a question to be submitted to the jury.                                                      p. 194

*Decided November 21st, 1919.*

Appeal from the Circuit Court for Frederick County (WORTHINGTON and PETER, JJ.).

Defendant's second prayer was as follows:

"The defendant prays the Court to instruct the jury that it is further necessary for the plaintiff to prove that the defendant acted with malice; and if the jury find that the defendant did not act maliciously in the premises, but all that he did, tending towards the arrest and prosecution of the plaintiff, was done under the advice and direction of the State's Attorney for Frederick County, and without malice on his part, then their verdict must be for the defendant. (*Rejected.*)"

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Edward J. Smith* and *Leo Weinberg,* for the appellant.

*Milton G. Urner, Jr.,* with whom was *Reno S. Harp* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee sued the appellant for malicious prosecution, and the trial resulted in a verdict for the plaintiff (appellee)

for $800. From a judgment entered thereon this appeal was taken. The defendant procured a warrant for the plaintiff from a justice of the peace of Frederick County charging her with the larceny of a gold watch and some other jewelry. She was arrested and taken before another justice of the peace, who required her to give bond for her appearance before the justice who issued the warrant. She gave bail and appeared at police headquarters in Frederick to answer said charge, and another justice who was acting that day at police headquarters, after hearing, released her on bail to await the action of the Grand Jury, which failed to find an indictment and dismissed the case. Eleven bills of exception were taken, the first nine relating to the admissibility of evidence and the tenth and eleventh presented rulings on the prayers.

The first, second, third, fourth, fifth, sixth and seventh exceptions present the same question and can be considered together. It is whether a plaintiff in an action for malicious prosecution can offer testimony in chief to show that his reputation was good at the time of the prosecution in the community in which he lived, and where the offense was alleged to have been committed, such evidence being confined to reputation for honesty in a case of this kind where the charge was larceny. Although we have not been referred to a decision in this State directly determining this question, we can have no doubt about its admissibility, either on reason or the adjudicated cases elsewhere. In order to recover in such actions it is incumbent on the plaintiff to prove the want of probable cause for instituting a criminal prosecution. It is true that in civil actions evidence of general reputation of the plaintiff is generally not admissible unless attacked, or the proceedings are such as put the reputation of the parties in issue; but a good reputation ought not only to be some protection against hasty, careless or ill-founded charges of the commission of crimes, but it should demand more care and caution than when one of bad reputation is suspected. It is less probable that one who has a good reputation had committed a crime than one who has not. Although some courts only admit such

testimony when it is proven that the defendant in such an action knew of the reputation the plaintiff bore, the great weight of authority does not even require direct proof of that knowledge. In this case, although the plaintiff was an humble colored woman who did domestic work in the different homes of those employing her, she seemed to have possessed to an unusual degree the confidence of her employers and neighbors, and the wife of the appellant, for whom the appellee worked at times, was quite emphatic in what she had to say about her. This is in the record: "You had had Stella Fairfax to work at your house before? Answer. Yes, sir. Q. Did you consider her honest? A. Sure, I considered her honest. Q. Do you know whether or not your husband considered her honest? A. Certainly." The defendant himself testified that he had known Stella Fairfax for a number of years; that she had been employed in their family and they would employ her yet if she would come. There is then no such distinction in this case as some of the cases above referred to make. Among the many decisions holding that evidence of the good reputation of the plaintiff in such action is admissible are *Thurkettle* v. *Frost,* 137 Mich. 115, 4 A. & E. Ann. Cases, 836; *McIntire* v. *Levering,* 148 Mass. 546, 20 N. E. 191; *Woolworth* v. *Mills,* 61 Wis. 44, 20 N. W. 728; *Shea* v. *Cloquet Lumber Co.,* 97 Minn. 41, 105 N. W. 552; *Louisville, etc., R. Co.* v. *Owens,* 164 Ky. 557, 175 S. W. 1039; *Carp* v. *Queen Ins. Co.,* 203 Mo. 295, 101 S. W. 78; *Emory* v. *Egan,* 75 Kan. 82, 88 Pac. 740; *Pennsylvania Co.* v. *Weddle,* 100 Ind. 138; *Ross* v. *Innis,* 35 Ill. 487; *Rosenkranz* v. *Barker,* 115 Ill. 331, 3 N. E. 93. See also notes to *Thurkettle* v. *Frost,* 4 A. & E. Ann. Cases, 836, and to *Calhoun* v. *Bell,* Ann. Cases, 1916 D. 1165, where the subject is discussed and cases in addition to the above are cited. *Torch* v. *Dell,* 88 Md. 459, was an action for malicious prosecution of the appellee, who was charged with the larceny of certain books, was indicted, tried and acquitted. On page 466 the Court said: "It is true the books had been in the custody of the appellee, but the appellants knew that he was a man whose

character, as the evidence showed, was above reproach," etc., thus showing that this Court recognized the value of good character in such cases.

It is clear, then, that such evidence is admissible. No point was made about it, but we do not want to pass by the forms of the questions without some comment. All of them ask the witnesses whether they knew the plaintiff's "reputation for honesty," etc. It was said in *Sloan* v. *Edwards,* 61 Md. 103, that "The long settled practice both in England and in this State, though departed from to some extent in a few of the States in this country, requires that the witness called to prove character either good or bad should be interrogated as to his means of knowledge of the *general reputation* of the person in question among his neighbors, and what that reputation is. The evidence must be confined to *general reputation,*" etc. Chief Judge Alvey quoted from 1 *Greenl. on Evidence,* Sec. 461, that the witness "must be able to state what is *generally said* of the person by those amongst whom he dwells, or with whom he is chiefly conversant, for it is this only that constitutes the general reputation or character." Other authorities might be cited to the same effect, but we do not deem it necessary. As no objection seems to have been made to the form of the questions, and as the defendant and his wife testified to the good character of the plaintiff for honesty, we do not feel called upon to reverse the judgment by reason of the question not being in proper form, but they should always conform to the rules in this State.

The eighth exception was taken to the Court permitting the State's Attorney for Frederick County to answer on cross-examination the following question: "Did you or not hear Mr. Sappington say on that occasion, not under oath, and while not testifying on oath: 'We will prove it' or 'I will prove it,' or 'I will get the evidence,' or something to that effect?" The occasion referred to was when the plaintiff was before the justice of the peace who held her for action of the Grand Jury. We can see no possible objection to that question. It reflected upon the action of the defendant in refer-

ence to the prosecution. The defendant had proved by the
State's Attorney that Mr. Sappington had appeared before
the Grand Jury in pursuance of a summons that was issued.
The object of such evidence could only have been to show that
the defendant in the further prosecution of the case was only
doing what he was required to do. If the plaintiff recovered,
it was important to show, if she could, that even after she had
been taken before the justice, the defendant asserted that they
would get more evidence than had been produced. It indi-
cated that the defendant did not, when he swore out the war-
rant, know of anything more than had been testified to, but
that he would endeavor to get more evidence. If a warrant
is sworn out against a party and the evidence does not meas-
ure up to what is required to hold him for the action of the
Grand Jury, or there is reason to believe that it is not suffi-
cient to convict him, the prosecuting witness should be ready
to confess his mistake in swearing out the warrant, rather
than rely on getting more evidence, which presumably he
does not know of then, or else take the consequences in case
there is a recovery against him for malicious prosecution.
Such evidence was at least relevant as reflecting upon the
damages to be recovered. This case furnishes as good an
illustration as could be given. There is a stipulation in the
record that "It is admitted by the defendant that, subsequent
to the termination of the prosecution instituted by the de-
fendant against the plaintiff, it was discovered by the defend-
ant that the plaintiff was wholly innocent of the charge made
against her by the defendant." If that had been discovered
before the hearing before the justice, or even if it could have
been discovered by proper inquiry, and the defendant had
made such a remark as was testified to by the State's Attor-
ney, could it be said that it would not be admissible to prove
that fact, because he did not know it, or could not have dis-
covered it, prior to the time the warrant was sworn out?
Surely not. If the plaintiff recovered, such evidence would
have properly added very materially to the damages which
the jury would have been justified in allowing. So, when the

case was presented to the justice she might have been discharged then and there if that was all which could be produced against her, but if the justice was assured by the defendant that further proof could be obtained, he might have felt that it was his duty to hold her.

The ninth exception is likewise without merit. That witness and another went with the defendant's son to the defendant's house shortly after the plaintiff left it the evening that the watch and jewelry were taken. He testified in chief that they did not go upstairs (where the watch and jewelry were proven to be) on that occasion, and also that he had testified before the justice and before the Grand Jury. He was asked: "When you testified in those prosecutions, both before the justice of the peace and before the Grand Jury, you knew at the time that she hadn't taken it, didn't you?" That was admitted, excepted to, and he answered: "Yes, sir." If, for no other reason, it was at least admissible for the purpose of reflecting upon his credibility. The defendant had called him as a witness to prove that he and the other two young men did not go upstairs, the only possible object being to show that the only person known to be in the house after the defendant's wife had left it, except the plaintiff, had not gone upstairs. If he knew then and when he testified before the justice and the Grand Jury that the plaintiff had not taken the watch and the jewelry, it was clearly his duty to say so, and not give evidence which was intended to point to the plaintiff as the guilty one, when this case came before the justice and before the Grand Jury. But if there was any valid objection to the evidence being admitted, it could not have done the defendant any harm, as it was already admitted that the plaintiff did not take the things and the testimony of the witness was not material, as it only showed that the witness did not go upstairs *at that time.*

The rulings on what are marked as defendant's (A) prayer and defendant's (B) prayer are presented by the ninth bill of exception. (A) prayer asked the Court to instruct the jury that under the pleadings and evidence in the case, no

evidence legally sufficient had been offered to entitle the plain-
tiff to recover, and (B) prayer was that there was no legally
sufficient evidence of a want of probable cause for the prose-
cution mentioned in the declaration.  There was no error in
refusing either of those prayers.  The want of probable cause
is a mixed question of law and fact.  The jury passes on the
existence of facts relied on to constitute the want of probable
cause and the Court determines what amounts to a want of
probable cause.  Without entering upon a lengthy discussion
of the evidence we are not prepared to say that the plaintiff
failed to prove a want of probable cause.  The defendant
knew that his house was unoccupied for a considerable time
that evening and night, when someone might have gotten in
and stolen the articles, that the plaintiff left the house before
night, when his son was soon to return, and left the key under
the mat for him, as he had told her to do, that the plaintiff
had a good reputation for honesty and worked for his wife
from time to time.  There is nothing in the record to sug-
gest that she was such a bold person as would likely take the
defendant's watch and the other jewelry which he had left
exposed in the bedroom. · She went back to the defendant's
home the day after the articles disappeared to work for his
wife and worked in that neighborhood for others.  Neither
he nor his wife made inquiry of her as to whether she had seen
the watch, etc.  The apparent desire of the plaintiff to avoid
Mrs. Sappington, as testified, might well have been explained
on grounds other than her guilt.  It is evident that this
woman was very busy and was in demand.  If she had been
the thief who took those things, and was bold enough to take
them when it was known that she was in the house alone, her
actions with Mrs. Sappington would have been different from
what they were described to be, and most of the evidence in
reference to her nervousness and her conduct was denied by
her, and hence it was for the jury to pass on those facts.  It
is therefore useless to discuss those prayers further.  There
are so many decisions in this State in suits for malicious

prosecutions that there cannot be much difficulty about the law on the subject, and we will not prolong this opinion by quoting from the authorities.

The only ruling in the eleventh exception which seems to be complained of is the rejection of the defendant's second prayer. There could not well be any other, as the plaintiff's prayers are in accordance with our decisions, and the defendant's first, third, fourth and fifth were granted. We will ask the reporter to publish this prayer with his report of the case.

The case of *Stansbury* v. *Fogle,* 37 Md. 369, is relied on to show the correctness of this prayer. It is a copy of the fourth prayer of the defendant in that case, but that was granted by the trial court and the defendant took the appeal. It was not passed on by this Court and was clearly defective for several reasons. It is not necessary for the plaintiff to prove, as the prayer asserts, that the defendant acted with malice. Malice may be inferred from the want of probable cause. *Straus* v. *Young,* 36 Md. 246; *Medcalfe* v. *Brooklyn Life Ins. Co.,* 45 Md. 198; *Bishop* v. *Frantz,* 125 Md. 183, 198. The prayer was also faulty because it did not submit to the jury the question whether the defendant had laid before the State's Attorney the material facts relating to the charge. The defendant's fifth prayer was granted and that instructed the jury as to the effect of the advice and direction of the State's Attorney.

It follows that the judgment must be affirmed.

*Judgment affirmed, the appellant to pay the costs.*