## John E. Burch, Defendant in Error, v. Fred C. Lockwood, Plaintiff in Error.

### Gen. No. 31,978.

1. MALICIOUS PROSECUTION—*burden to prove want of probable cause and malice.* In an action for malicious prosecution the burden is on the plaintiff to prove, among other things, that the defendant had no reasonable cause to believe that plaintiff was guilty of the offense charged against him, and that defendant was actuated by malice in instituting the proceeding.

2. MALICIOUS PROSECUTION—*sufficiency of evidence.* In an action of malicious prosecution for an alleged theft, verdict for plaintiff held not against the manifest weight of the evidence.

3. MALICIOUS PROSECUTION—*admissibility of evidence of general reputation for honesty.* In an action for malicious prosecution for an alleged theft evidence is admissible by the plaintiff as to his general reputation for honesty in the neighborhood.

4. HARMLESS ERROR—*instructions in malicious prosecution.* In an action for malicious prosecution, error in an instruction for plaintiff defining probable cause as meaning "such reasonable ground of suspicion sufficiently strong in itself as to warrant a cautious man in believing that the person arrested is guilty of the offense with which he is charged," in that the word "reasonable" should precede "cautious," does not warrant a reversal where the instruction did not direct a verdict and the law was correctly given in an instruction for defendant.

5. MALICIOUS PROSECUTION—*confusing instruction on probable cause.* In an action for malicious prosecution, the meaning is not clear in an instruction for the defendant ''that want of probable cause must be shown by the plaintiff, by affirmative evidence, and the jury have no right to infer it from any degree of malice which may be proved,'' and the instruction is properly refused as tending to confuse the jury.

6. DAMAGES—*when $1,275 excessive in malicious prosecution.* A verdict for $1,275 in an action of malicious prosecution held excessive, and a remittitur of all but $600 required, where plaintiff, a man in modest circumstances, was arrested for the alleged theft of his landlord's lamp, was kept in jail for ten hours, was called opprobrious names by the defendant, and was required to pay his attorney $35 for services.

Error by defendant to the Circuit Court of Cook county; the Hon. A. A. PARTLOW, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1927. Affirmed upon remittitur; otherwise reversed and remanded. Opinion filed December 27, 1927.

CHARLES W. STIEFEL, JR., for plaintiff in error.

EDWARD McTIERNAN, for defendant in error.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against the defendant to recover damages for the malicious prosecution and false arrest of plaintiff, in that the defendant filed in the municipal court of Chicago an information charging that plaintiff stole ''one stand lamp'' of the value of $14, being the property of the defendant, and that upon a trial of the merits of the case in the municipal court the defendant was found not guilty and discharged. The case was tried before a judge and a jury and there was a verdict and judgment in plaintiff's favor for $1,275.

The record discloses that on November 7, 1923, the defendant, Lockwood, appeared before a judge of the municipal court of Chicago and made complaint against plaintiff, John E. Burch, and filed a verified

information in the municipal court of Chicago charging him with having stolen a lamp of the value of $14, being the property of Lockwood; that a capias was issued and Burch was arrested November 25, 1923, and on the next day, after a hearing before the court, he was discharged.

The evidence further tends to show that plaintiff, his wife and two daughters were living in a furnished apartment on the North side of Chicago, and that he had rented it from Mrs. Miller; that on or about the 15th of October, 1923, Mrs. Miller sold her interest in the property to Mrs. Margaret Schultz, the defendant's sister; that Mrs. Schultz thereupon took possession and she and the defendant were living in the building, the defendant attending to the furnace and collecting the rents; that on the morning of November 2, 1923, plaintiff and his family moved out of the property and left the key to the apartment on a table but did not notify Mrs. Schultz or the defendant that they were going to move, nor did they give them their new address; that shortly after plaintiff and his family vacated the apartment, Mrs. Schultz and the defendant entered it, and they testified that they found that some of the personal property belonging to Mrs. Schultz was missing, including the lamp. Five days thereafter defendant filed the information in the municipal court as above stated. The evidence further is to the effect that plaintiff was not arrested until November 25 by reason of the fact that neither Lockwood nor his sister, Mrs. Schultz, knew where he lived and were unable to inform the police officers so that he could be taken into custody.

Plaintiff testified in substance that he was arrested on Sunday morning about ten o'clock, taken to the police station and locked up in jail, where he remained for about ten hours, when he was released on bond; that the case came up for trial the following day in the municipal court and that on the hearing at that time

the defendant, Lockwood, called plaintiff a "dirty rat" and stated that he would "get" plaintiff. Plaintiff further testified that Lockwood there said, "I would bite my mother and I was a dirty rat and scum and my attorney should be ashamed to represent me"; that he did not take the lamp; that he and his family moved out of the furnished apartment on November 2, using a little Ford truck for the purpose of removing his belongings; that Lockwood requested him to move; that he paid $35 to the attorney for defending him in the municipal court; that he was a patent attorney employed by a firm engaged in that line of practice, and that he recently came from Bridgeport, Connecticut. It further appears that he was not discharged by his employers on account of his arrest. Plaintiff further testified that a short time before he moved from the furnished apartment his wife put the lamp in a closet in the apartment. Plaintiff's daughter, thirteen years of age, testified that she heard the defendant, Lock-- wood, call her father a "dirty rat" at the time of the trial in the municipal court. She further testified that the lamp was in the pantry when they vacated the premises. One of plaintiff's employers testified that plaintiff's reputation for honesty was good.

Lockwood testifed in his own behalf that at the time of the trial he was manager of a delicatessen store; that for thirteen years he had worked as a brakeman and conductor for the Illinois Central Railroad Company; that he first met plaintiff about October 17, 1923, after his sister had taken over the apartment, and at that time he demanded payment of the rent for the apartment from plaintiff, which was payable weekly; that he made a similar request on the 24th and 29th of October and on November 1st, but that no payment was received, plaintiff stating that he was unable to pay it at that time; that when he called for the rent he saw the lamp in question on the library table

in the center of one of the rooms; that on November 2nd he got up at the usual time, about 5:30 o'clock, to start the steam; that about 7:30 o'clock when he was attending to his duties around the building, he noticed in the rear of plaintiff's apartment indications that plaintiff was moving out; that shortly thereafter he and his sister, Mrs. Schultz, went over to the apartment, rang the bell at the front door and then the bell at the rear door; that both doors were locked; that they then opened one of the doors with a pass key and then found the key to the apartment on the library table in one of the rooms of the apartment; that they then checked up on the furnishings and found some bed linens, silverware and the lamp missing; that the lamp was not in the pantry; that the plaintiff owed $42.50 for rent and that it had not yet been paid; that a few days afterwards he went to the municipal court and signed the complaint because he believed that plaintiff had taken the lamp. He further testified that on the hearing in the municipal court he did not call plaintiff a rat several times but only twice; that he did not say that plaintiff was a man who would bite his own mother; that he did not say to plaintiff that he would get him, and that he did not see plaintiff move out of the apartment.

Margaret Schultz testified that she took over the apartment about the middle of October; that she heard her brother, the defendant, demand payment of the rent from plaintiff; that plaintiff said he was hard up and unable to pay at that time; that there was no quarrel between them; that Lockwood managed the place for her, his duties being to collect the rents, look after the building and do janitor work; that after plaintiff moved on the morning of November 2 she and the defendant went through the apartment as testified by her brother; that she found some knives, forks, sheets, pillow covers, a bed spread and the lamp missing from the apartment; that she looked through all

of the apartment and the lamp was not there. The evidence is further to the effect that no one was in the apartment from the time plaintiff vacated it until defendant and his sister, Mrs. Schultz, went through it.

In rebuttal plaintiff testified that he had rented the apartment from Mrs. Miller by the month and that he had paid all the rent; that when the defendant demanded the rent he told defendant that he did not owe any and that the defendant asked him to move by twelve o'clock.

At the close of the case the defendant requested the court to give a special interrogatory to the jury. The court modified the request, and as modified it was as follows: "Did the defendant on to wit, November 5, 1923, on which date the defendant caused a capias for the apprehension of the plaintiff to be issued by one of the Judges of the Municipal Court of Chicago, have probable cause to believe the plaintiff guilty of carrying away the stand lamp in question?" This interrogatory was answered in the negative.

In an action for malicious prosecution the burden is on the plaintiff to prove, among other things, that the defendant had not reasonable cause in believing that plaintiff was guilty of the offense charged against him, and that the defendant in instituting the criminal proceedings was actuated by malice. *Glenn v. Lawrence,* 280 Ill. 581. An instruction to this effect was given to the jury; they found in favor of the plaintiff by their general verdict and also by the special interrogatory, and after a careful consideration of all the evidence we are unable to say that their finding is against the manifest weight of the evidence.

The defendant further contends that it was error for the court to admit, over his objection, evidence as to the general reputation of the plaintiff for honesty in the neighborhood in which he lived, for the reason that no evidence was offered impeaching the plaintiff's reputation, and that the information, which was sworn

to by the defendant and which he caused to be filed in the municipal court, was based upon his own knowledge and not upon information and belief. In support of this contention the case of *Skidmore v. Bricker,* 77 Ill. 164, is cited. That case sustains defendant's contention, but in an earlier case and also in a later case the Supreme Court of this State held that in an action to recover for an alleged malicious prosecution and false arrest, the general reputation of the plaintiff might be shown. *Israel v. Brooks,* 23 Ill. 575; *Rosenkrans v. Barker,* 115 Ill. 331. In the *Rosenkrans* case the court said (p. 339): "In *Israel v. Brooks,* 23 Ill. 575, an action for malicious prosecution, it was held that previous good character may be shown as one evidence of want of probable cause." The *Israel* case was an action for malicious prosecution. The court there said (p. 577): "The onus is on the plaintiff to show affirmatively, by circumstances or otherwise, that the defendant had no ground for the prosecution. * * *

"What these circumstances may be, cannot be specified, but we would think, among them, the good character of the party accused would stand out prominently. All must admit that is, and must be, a strong fact, if known to the accuser, to ward off suspicion, and therefore, for this purpose, it is entirely competent for the plaintiff in the action, in his opening proofs, to show that his character was good, and known to be so by the defendant, when he made the accusation. As the onus of proving a negative—the absence of probable cause—is thrown upon the plaintiff, slight evidence will usually suffice for such purpose. But the evidence of an uniform good character up to the time of the charge, is something more than slight evidence, and the plaintiff should have the benefit of it. If known to the prosecutor, what single fact is better calculated to weaken a belief, he being a prudent and cautious man, in the guilt of the suspected party. On the other hand, his bad character

may be shown by the defense, as good ground for augmenting a suspicion against him. We know, in no actions save criminal prosecutions and actions for defamation, can the character of the party, as a general rule, be inquired into, but in such a case as this, there seems to be great propriety in permitting it, for the reasons here given.'' To the same effect is *Waters v. West Chicago St. R. Co.*, 101 Ill. App. 265, where the court said (p. 273): ''In a trial for malicious prosecution, the reputation of the plaintiff as to matters bearing on the question of whether he would be likely to commit the crime of which he was accused may be given in evidence so far as such reputation was known to the defendant when he instituted the prosecution. *Israel v. Brooks,* 23 Ill. 575.'' And the Supreme Court of Massachusetts in a well-considered opinion held that the good reputation in the community of a plaintiff may be proven by him at the trial of an action for malicious prosecution. *McIntire v. Lavering,* 148 Mass. 546. In that case the court said (p. 547): ''There is some conflict of authority as to the competency of evidence of the reputation of the plaintiff in a trial of an action for malicious prosecution. There are many cases in which it is held that in actions of this kind, as in actions of slander, the general bad reputation of the plaintiff may be shown in mitigation of damages. There are also decisions that in suits for malicious prosecution such reputation may be shown to meet the allegation of want of probable cause.'' Citing a number of authorities, including *Rosenkrans v. Barker,* 115 Ill. 331; and continuing the court there said (p. 548): ''But the cases do not go so far as to permit proof of particular instances of bad conduct. In determining whether there is probable cause for a prosecution for the commission of a crime, the known character or general reputation of the person suspected is always an element of some importance; for, as was said by Chief Justice Shaw in *Bacon v. Towne,*

*ubi supra*: 'The same facts which would raise a strong suspicion in the mind of a cautious and reasonable man against a person of notoriously bad character for honesty and integrity, would make a slighter impression if they tended to throw a charge of guilt upon a man of good reputation.' In a suit of this kind, where the prosecution complained of was for an offense implying moral turpitude, the plaintiff's general reputation at the time of the prosecution, if the defendant was where he would be likely to know it, is always involved in the issue, and the defendant may properly be permitted to show that it was bad. We see no good reason why the plaintiff should not be permitted, on the other hand, to show affirmatively that it was good. It is true that every one is presumed to be of good character until the contrary appears, and this presumption ordinarily saves the necessity of proof. Indeed, in civil cases, as a general rule, evidence of reputation is not competent upon a question as to liability for a particular act. But whenever character is in issue the rule is different. One charged with a crime is not obliged to rest upon a presumption of good character. *In favorem libertatis* he may prove the fact, if he can, by a weight of evidence far more effective than any mere presumption. A plaintiff in a suit for malicious prosecution upon a criminal charge has the burden of proving that the prosecution was without probable cause. In defending against the prosecution he would have had the right to show his good reputation, although his character was not attacked otherwise than incidentally by the prosecution itself. The same incidental attack upon his character necessarily appears in the suit for the malicious prosecution. To prove that the attack was originally made without probable cause, we think he should be permitted to show his good reputation, known to the defendant when the prosecution was commenced. In several of the states there are adjudications to this

effect.'' Citing a number of authorities, including Israel v. Brooks, supra.

In an action for malicious prosecution we think the law is firmly established that the plaintiff may, as part of his case, offer evidence as to his reputation. 1 Wigmore on Evidence (2nd ed.) sec. 258; William M. Ross & Co. v. Innis, 35 Ill. 487; Sappington v. Fairfax, 135 Md. 186; Thurkettle v. Frost, 137 Mich. 115; Shea v. Cloquet Lumber Co., 97 Minn. 41; Woodworth v. Mills, 61 Wis. 44; McIntosh v. Wales, 21 Wyo. 397. In the citation from Wigmore in discussing this question, the author says: ''There is no reason why the plaintiff's repute should not be received in chief.''

In the instant case the evidence shows that plaintiff and the defendant lived in the same building and that plaintiff's general reputation for honesty in the neighborhood where he lived was good. This was presumably known by the defendant when he filed a complaint in the municipal court. We think the evidence was clearly admissible.

Complaint is made that the court erred in refusing to give defendant's offered instruction No. 9. This offered instruction purported to set up in detail all of the evidence in the case as contended for by the defendant. This instruction was properly refused for the reason that it in effect stated that the lamp in question belonged to the defendant when the defendant's evidence showed that it belonged to Mrs. Schultz, the defendant's sister. It was also erroneous in that it stated that if the jury believed from the evidence that the lamp was not removed by the defendant or any person at defendant's direction, etc. There was no evidence that the defendant directed anyone to remove the lamp. Moreover, we think it was apt to mislead the jury.

A further complaint is made that the court erred in giving plaintiff's instructions Nos. 1 and 4. By No. 1 the jury were told that if they believed from the

evidence that defendant in causing plaintiff's arrest had no reasonable ground of suspicion sufficiently strong in itself to warrant a cautious man in believing that the plaintiff was guilty, etc., then the defendant acted without probable cause. Instruction No. 4 defined probable cause as meaning "such reasonable ground of suspicion sufficiently strong in itself as to warrant a cautious man in believing that the person arrested is guilty of the offenses with which he is charged." The objection to these instructions is that the word "reasonable" should precede the word "cautious" in each instruction. We think the criticism of the instruction is warranted, but that the error is not of such a degree as would warrant a reversal. Neither of these instructions directed a verdict and in another instruction given the court told the jury that if they believed from the evidence that the defendant when he instituted the municipal court proceeding honestly believed that the plaintiff was guilty of the offense charged and that his belief was founded on circumstances tending to show the guilt and was sufficient to induce, in the mind of an ordinarily reasonable and prudent man the belief in such guilt, this would negative the idea of want of probable cause.

A further complaint is that the court erred in refusing to give defendant's offered instruction No. 6. That instruction was as follows: "The court instructs the jury that want of probable cause, though negative in its character, must be shown by the plaintiff, by affirmative evidence, and the jury have no right to infer it from any degree of malice which may be proved." We do not understand the meaning of this instruction and we think it properly refused as it might confuse the jury. Nor was there any error in the refusal of the court to give the special interrogatory as requested by the defendant. The part of this interrogatory which the trial court struck out was to the effect that the lamp had been in the possession of

plaintiff on November 1. We think the modification was clearly warranted and made the interrogatory clear.

A further point made is that the amount of the verdict clearly shows that it was the result of prejudice and passion. We think the amount of the verdict is excessive in view of all the evidence in the record, and if plaintiff will remit all but $600 within ten days, judgment will be affirmed for $600; otherwise the judgment will be reversed and the cause remanded.

*Affirmed upon remittitur;*
*otherwise reversed and remanded.*

MATCHETT, P. J., and McSURELY, J., concur.